[Civ. No. 60462. Second Dist., Div. Four. Oct. 21, 1981.]

WALTER BILOFSKY et al., Plaintiffs and Appellants, v. GEORGE DEUKMEJIAN, as Attorney General, etc., et al., Defendants and Respondents.

**COUNSEL**

Hecht, Diamond & Greenfield and Roger Jon Diamond for Plaintiffs and Appellants.

George Deukmejian, Attorney General, Richard D. Martland, Assistant Attorney General, Henry G. Ullerich and Christopher C. Foley, Deputy Attorneys General, John H. Larson, County Counsel, and Tighe F. Hudson, Deputy County Counsel, for Defendants and Respondents.

**OPINION**

**FOSTER, J.\***—Plaintiffs Walter Bilofsky and Raymond L. Weisberg, M.D., sued the Attorney General, the District Attorney of Los Angeles County, and the State of California for a declaration that section 29770

---

\*Assigned by the Chairperson of the Judicial Council.

of the Elections Code[1] is unconstitutional. From an adverse judgment they appeal.

In their complaint they allege that Weisberg is a proponent[2] and Bilofsky a circulator of a petition to qualify for the November 1980, general election an initiative measure requiring establishment of "Smoking and Non-Smoking Sections" in enclosed public places, places of employment, educational facilities, health facilities and clinics. They were also circulators of petitions to qualify a similar measure, known as Proposition 5, which was defeated in the 1978 general election. They wish to use the names and addresses of signers to mail to them blank petitions with a request that they circulate them and return the signed petitions to plaintiffs for filing, to mail notices to signers of campaign events and information concerning the progress of the campaign, and to mail to them additional materials, including solicitations for funds, for purposes consistent with the objective of the campaign. However, the Attorney General has issued an opinion (63 Ops.Cal.Atty.Gen. 37 (1980) that it is unlawful for them to do so.

The case was tried on the verified complaint, exhibits to it, and declarations. A judgment was given declaring that:

1. Section 29770 is constitutional on its face.

2. It prohibits the proponent and circulator from communicating by mail with signers, by obtaining their names and addresses from the petition, whether or not the communication relates to the subject of the initiative petition.

3. The prohibition applies both to the qualification period and the election campaign after qualification of the measure for the ballot.

4. The prohibition applies at all times.

Plaintiffs contend that section 29770 violates their rights under the First and Fourteenth Amendments to the United States Constitu-

---

[1] "No circulator of an initiative, referendum, or recall petition shall permit the list of signatures or the petition to be used for any purpose other than qualification of the initiative or referendum measure or recall question for the ballot. Violation of this section is a misdemeanor."

[2] Section 29770 literally is restricted to a "circulator." The Attorney General (63 Ops.Cal.Atty.Gen. 37 (1980)) has construed that term to include a proponent. Plaintiffs make no contention on appeal that the statute has any different application to Weisberg than to Bilofsky.

tion, and under the California Constitution (art. I, §§ 2 and 3; art. II, § 8), of petitioning the government, of initiative petition, of free speech and free association. Alternatively, they urge that the section should be construed so as not to prohibit their desired use of signatures during the phase of the campaign in which they seek to qualify the measure for the ballot.[3]

Although no law precludes plaintiffs from communicating with all California residents to induce them to circulate petitions, contribute funds and otherwise participate in campaigns to qualify an initiative for the ballot, as a practical matter it is necessary to preselect the recipients of communications. Most of the signers of a petition can be identified as persons sympathetic to the objectives of the campaign. Much or all of the funds needed in the campaign can be generated in small amounts from signers, thus enabling citizen groups to succeed against wealthy special interests. However, the circumstances of obtaining signatures on petitions, often in shopping centers or similar public places, afford little opportunity for discussion with signers to solicit their participation. Many shopping centers have regulations prohibiting the solicitation of funds. These circumstances may preclude enlistment of the signers at that time. Also circulators are usually unable to provide information as to future campaign events because they are not yet planned. It is necessary, therefore, that the circulators have use of names and addresses on the petitions to enable communication with signers at a later time. Section 29770 as construed by the Attorney General prohibits them from doing so. Thus they urge, they are denied their right of communication and association with those persons in sympathy with the objectives of the campaign, and that denial, in turn, impedes their opportunity of petitioning the government and participating in the initiative process.

In examining the constitutional validity of statutes having impact upon First Amendment rights, the courts draw a distinction between those intended to have a direct regulation upon the exercise of those rights and those having as their objective the protection of a lawful in-

---

[3]Subsequent to the judgment, the measure appeared on the ballot as Proposition 10 in the November 1980 General Election and was defeated. Although no issue is raised by respondents, plaintiffs in their appellate brief address the issue of mootness. They allege in their complaint that they seek to use in future campaigns to qualify similar initiative measures the information gathered in circulating petitions to qualify Proposition 10. Under these circumstances, continued public interest in the issues and the likelihood of their recurrence require consideration of them on their merits. (*Diamond v. Bland* (1970) 3 Cal.3d 653, 657 [91 Cal.Rptr. 501, 477 P.2d 733]; *Libertarian Party v. Eu* (1980) 28 Cal.3d 535, 539 [170 Cal.Rptr. 25, 620 P.2d 612]; *Helena Rubenstein Internat. v. Younger* (1977) 71 Cal.App.3d 406, 411 [139 Cal.Rptr. 473].

terest of the state and whose impact upon First Amendment freedoms is only incidental. This distinction is pointed out in *Konigsberg* v. *State Bar* (1961) 366 U.S. 36 [6 L.Ed.2d 105, 81 S.Ct. 997]: "At the outset we reject the view that freedom of speech and association [citation], as protected by the First and Fourteenth Amendments, are 'absolutes,' not only in the undoubted sense that where the constitutional protection exists it must prevail, but also in the sense that the scope of that protection must be gathered solely from a literal reading of the First Amendment. Throughout its history this Court has consistently recognized at least two ways in which constitutionally protected freedom of speech is narrower than an unlimited license to talk. On the one hand, certain forms of speech, or speech in certain contexts, has been considered outside the scope of constitutional protection. [Citations.] On the other hand, general regulatory statutes, not intended to control the content of speech but incidentally limiting its unfettered exercise, have not been regarded as the type of law the First or Fourteenth Amendment forbade Congress or the States to pass, when they have been found justified by subordinating valid governmental interests, a prerequisite to constitutionality which has necessarily involved a weighing of the governmental interest involved. [Citations.] It is in the latter class of cases that this Court has always placed rules compelling disclosure of prior association as an incident of the informed exercise of a valid governmental function. [Citation.] Whenever, in such a context, these constitutional protections are asserted against the exercise of valid governmental powers a reconciliation must be effected, and that perforce requires an appropriate weighing of the respective interests involved." (366 U.S. at pp. 49-51 [6 L.Ed.2d at pp. 116-117].)

In their briefs on appeal, plaintiffs argue that the objective of section 29770 was to make more difficult the exercise of the initiative process and in oral argument urged that it was the intent of the Legislature to impede the free exercise of their constitutional freedoms in this area. They provide no legislative or other evidence of such motivation and we find none. To the contrary, we believe section 29770 was enacted for a proper legislative purpose.

In 1972, the California electorate adopted an amendment to the California Constitution adding to its enumeration of inalienable rights possessed by all persons the right of privacy. Section 29770 of the Elections Code[4] was enacted in 1974 as part of a chapter adding or

---

[4]Section 29770 was enacted in 1974 as section 29256, but was renumbered as part of the extensive revision of the Elections Code in 1976. (Stats. 1976, ch. 1192.)

amending several sections of the Elections Code. (Stats. 1974, ch. 1410.)[5] The apparent purpose of the Legislature was to implement the California constitutional guarantee of privacy by insuring the least interference with that right of persons signing initiative, referendum and recall petitions.

Plaintiffs contend that because there are involved rights under the First Amendment, we must apply the standard of strict scrutiny to section 29770. ■ But section 29770, having as it does at best only an

---

[5]Section 315 (now § 319) pertaining to voters' affidavits was amended to add this significant language: "Any memoranda, notations, devices, computer data, or other means or material employed by the clerk indicating which petition or petitions have been signed by any registrant shall be destroyed as soon as practicable after the certification of the results of the election for which such memoranda, notations, devices, computer data, or other means or material was used, or if no election is held, as soon as practicable after the clerk's final certification showing the results of the examination of the petition; but in no event shall such memorandum, notations, devices, computer data, or other means or material be retained for more than 30 days.

"Such memoranda, notations, devices, computer data, or other means or material employed by the clerk indicating which petition or petitions have been signed by any registrant shall be available for the use of the clerk and his staff only and then only for the purposes for which they were prepared. Except as previously provided, they shall not be made available to any person or entity, public or private, for any purpose whatsoever."

Sections 3506 (now § 3512) 3755 (now § 3756), and 4056.5 (now § 4054), concerning initiative and referendum petitions at various governmental levels, were added or amended to include a requirement that the officer receiving petitions "... shall preserve the petition until eight months after the certification of the results of the election for which the petition qualified or attempted to qualify for placement on the ballot. Thereafter, he shall destroy the petition as soon as practicable unless it is in evidence in some action or proceeding then pending or unless he has received a written request from the Attorney General, the Secretary of State, a district attorney, a grand jury, or the governing body of a county, city and county, or district, including a school district, that the petition be preserved for use in a pending or ongoing investigation into election irregularities, the subject of which relates to the petition's qualification or disqualification for placement on the ballot."

Language similar to that just quoted also appears in added sections 27003 (now § 27300) and 27510.5 (now §§ 27300 and 27301) and amended section 27205 (now §§ 27212, 27214, 27215, 27216, 27300, and 27301), dealing with recall petitions, and added section 5204 (now § 5202) concerning "an initiative, referendum or recall petition." Section 29256 (now § 29770) precluded a circulator from making use of the signatures on the petition "... for any purpose other than qualification of the ... measure or recall question for the ballot."

In the same statute, section 6253.5 was added to the Government Code, providing: "Notwithstanding the provisions of Sections 6252 and 6253, statewide, county, city, and district initiative, referendum, and recall petitions and all memoranda prepared by the county clerks in the examination of such petitions indicating which registered voters have signed particular petitions shall not be deemed to be public records and shall not be open to inspection except by the public officer or public employees who have the duty of receiving, examining or preserving such petitions or who are responsible for the preparation of such memoranda."

incidental effect upon those rights is properly examined under the balancing test, as stated in *United States* v. *O'Brien* (1968) 391 U.S. 367, 377 [20 L.Ed.2d 672, 680, 88 S.Ct. 1673]: "[A] government regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the government interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest."

The importance of the right of initiative has recently been affirmed by the Supreme Court in *Citizens Against Rent Control* v. *City of Berkeley* (1980) 27 Cal.3d 819 [167 Cal.Rptr. 84, 614 P.2d 742]. There, an ordinance of the City of Berkeley imposed a limitation of $250 per contribution in support of, or in opposition to, any ballot measure. Several persons made contributions in opposition to an initiative measure in excess of that amount, and sued to enjoin enforcement of the limitation on the ground, among others, that it infringed upon their First Amendment right of political advocacy.

The Supreme Court reviewed the ordinance in accordance with the standard of strict scrutiny. It noted that the right of initiative is a power reserved by the people. It is "'the duty of the courts to jealously guard this right of the people,'" and "[t]here can be no doubt that government regulation designed to preserve the integrity of the initiative and referendum promotes a goal of the highest priority." (27 Cal.3d pp. 824-825.) Although a limitation upon the amount of contribution to a political committee impinged upon the rights of political contribution and freedom of association, such limitation was justified in view of possible corruption of the initiative process through unlimited contributions. Recognizing that counterarguments could be made as to the merit of such limitation, the court nevertheless concluded that such was "... a value judgment. On such matters we yield to legislative determination." (27 Cal.3d at p. 831.)

*Citizens Against Rent Control* was concerned with a direct restraint upon the content of communication through an ordinance intended to have that effect. ▮ But section 29770 has neither of those attributes. It seeks to preserve as much as possible the privacy of persons who sign petitions as part of the elective process, insuring that for the exercise of that privilege they shall not be subjected to the consequences of the knowledge by others of that fact. In doing so it furthers the inter-

ests of the individual in his privacy and also promotes his freedom in exercising his privilege as an elector. On the other hand, the impact of the section upon the First Amendment rights of others is no greater than under many statutes designed to afford to individuals a privilege of privacy, and which thereby curtail access by others to the privileged area.

Plaintiffs maintain that the section leads to an incongruity in that it denies to them, the persons who caused the signatures to be given and as to whom identities are already known, access to individuals who have in effect enlisted in their cause. They point out that most individuals in our present society are on some mailing list and are accustomed to receiving unsolicited mail, which they may discard if they choose. Any right to privacy from communications from plaintiffs should be deemed waived.

We believe it a mistake to suppose that a person who signs an initiative or other petition may automatically be deemed to have enlisted in the cause of the proponent. Although many persons undoubtedly sign because they strongly believe in the measure, some may sign because they believe it appropriate to qualify the measure for the ballot so that the voters may decide. Still others may sign because of a yielding to the moral pressure of the moment. The Legislature could properly conclude that, whatever his reason, a signer has the right to the privacy of his decision, secure in the knowledge that the fact of his signing will not be used for any purpose beyond the minimum necessary to forward the initiative process.

Another attack upon the section is upon the ground of overbreadth. Plaintiffs maintain that other methods less restrictive upon their First Amendment rights could have been adopted by the Legislature to achieve the same purpose. Thus, they argue, the statute could have required that the petition contain a warning to signers that they might receive materials in the mail or contain a box for the signer to check if he objects to being placed on a mailing list.

Section 29770 is not restricted to the circumstance of an attempted communication with the signer but precludes use of the signature for any purpose. Although it is obviously broad in scope it is so designed in order to protect the signer from any use of his identity other than that integral to the initiative process. Proponents are not precluded from contacting signers if they do not obtain their identities from the peti-

tion. Furthermore, there is nothing to prevent the circulator, at the time he obtains a signature on the petition from obtaining his signature on another document authorizing the proponent later to contact him. The impact of the section upon plaintiffs' First Amendment rights is thus remote at best. Under these circumstances, clearly the claimed overbreadth does not rise to the level of being "... not only ... real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." (*Broadrick* v. *Oklahoma* (1973) 413 U.S. 601, 615 [37 L.Ed. 2d 830, 842, 93 S.Ct. 2908].)

■ Finally, we find no merit in two additional contentions. One is that, since the proscription of section 29770 is against use of the list of signatures, plaintiffs should be permitted to use the addresses of signers and send literature to unidentified occupants at those locations. However, the proscription of the section is against use of the *list* of signatures. The signer is obligated to affix on the petition, in addition to his signature, his printed name, his address and the name of his city or unincorporated community as a part of the process of signing. (Elec. Code, § 3516.)

The Legislature obviously intended to prohibit use of any information required of the signer for any purpose other than qualification of the initiative for the ballot.

The second is that section 29770 prohibits use of the list only for purposes other than qualification of the initiative. Plaintiffs would construe the section as permitting them to use the lists for any purpose consistent with the objectives of proponents in qualifying the initiative for the ballot. We believe that the Legislature in employing this language had in mind the more restrictive meaning of complying with the exacting procedural steps required to obtain, circulate, and process the petitions themselves, as to which circulators have specific duties. (See Elec. Code, §§ 3500-3523.)

The judgment is affirmed.

Kingsley, Acting P. J., and Woods, J., concurred.

A petition for a rehearing was denied November 10, 1981, and appellants' petition for a hearing by the Supreme Court was denied December 16, 1981.