Filed 12/15/14

# IN THE SUPREME COURT OF CALIFORNIA

| | | |
|---|---|---|
| HAMID RASHIDI, | ) | |
| | ) | |
| Plaintiff and Appellant, | ) | |
| | ) | S214430 |
| v. | ) | |
| | ) | Ct.App. 2/4 B237476 |
| FRANKLIN MOSER, | ) | |
| | ) | Los Angeles County |
| Defendant and Appellant. | ) | Super. Ct. No. BC392082 |
| _____ | ) | |

In professional negligence actions against health care providers, recovery of noneconomic damages is capped at $250,000. (Civ. Code, § 3333.2, enacted as part of the Medical Injury Compensation Reform Act of 1975 (MICRA).)[1] In any action, liability for noneconomic damages is several only, so that defendants pay in proportion to their share of fault. (§ 1431.2, part of the Fair Responsibility Act of 1986, enacted by passage of Proposition 51.)[2]

Here we consider whether a jury's award of noneconomic damages, reduced by the court to $250,000 under MICRA, may be further diminished by

---

[1] Further statutory references are to the Civil Code, unless otherwise specified.

[2] Noneconomic damages compensate the plaintiff for "pain, suffering, inconvenience, physical impairment, disfigurement and other nonpecuniary damage." (§ 3333.2, subd. (a).) Section 1431.2, subdivision (b)(2) similarly defines noneconomic damages as "subjective, non-monetary losses including, but not limited to, pain, suffering, inconvenience, mental suffering, emotional distress, loss of society and companionship, loss of consortium, injury to reputation and humiliation."

setting off the amount of a pretrial settlement attributable to noneconomic losses, even when the defendant who went to trial failed to establish the comparative fault of the settling defendant. The Court of Appeal held that such a further reduction is required by the MICRA cap.

We disagree. It would be anomalous to allow a defendant to obtain a setoff against damages for which he is solely liable. Neither the text nor the history of section 3333.2 reflects such an intent. Rather, the Legislature sought to address the problem of unpredictable jury awards. The limitation on noneconomic damages restrains settlements indirectly, by providing a firm ceiling on potential liability as a basis for negotiation. Only noneconomic damages awarded in court are actually capped.

## I. BACKGROUND

### A. *Trial Court Proceedings*

According to the complaint, 26-year-old Hamid Rashidi went to the emergency room at Cedars-Sinai Medical Center (Cedars-Sinai) in April 2007 with a severe nosebleed. He was treated and discharged, but returned the next month with the same symptom. Dr. Franklin Moser examined him and recommended surgery. In an operation performed the same day, Moser ran a catheter through an artery in Rashidi's leg up into his nose. Tiny particles were injected through the catheter to irreversibly block certain blood vessels. The particles were manufactured by Biosphere Medical, Inc. (Biosphere Medical). When Rashidi awoke after surgery, he was permanently blind in one eye.

Rashidi sued Moser and Cedars-Sinai for medical malpractice and medical battery. He sued Biosphere Medical for product liability, failure to warn, negligence per se, breach of express and implied warranty, and misrepresentation. The theory of liability against Biosphere Medical was that its particles were able to travel through very small blood vessels and collateral veins, causing a

2

significant risk they would migrate to places other than the intended sites. They did so here, causing Rashidi's blindness. Rashidi claimed Biosphere Medical had failed to disclose this risk, or the fact that the particles were irregular in size. Instead it marketed them as being uniform, allowing particular arteries to be accurately targeted.

Rashidi settled with Biosphere Medical for $2 million and with Cedars-Sinai for $350,000. The case went to trial against Moser alone. Moser presented no evidence of Cedars-Sinai's fault, and the court ruled that the evidence was insufficient to support instructions on Biosphere Medical's degree of fault. The jury found that Moser's negligence caused Rashidi's injury. It awarded $125,000 for future medical care, $331,250 for past noneconomic damages, and $993,750 for future noneconomic damages. The court reduced the noneconomic damages to $250,000, conforming to the MICRA cap.

Moser sought offsets against the judgment for the pretrial settlements with Cedars-Sinai and Biosphere Medical. The court rejected this claim, finding no basis for allocating the settlement sums between economic and noneconomic losses, and noting that the jury made no finding as to the settling defendants' proportionate fault. Moser appealed, contending he was entitled to offsets against both the economic and noneconomic damage awards. He did not dispute the ruling that he had made an insufficient showing of comparative fault on the part of Cedars-Sinai or Biosphere Medical. Rashidi cross-appealed, challenging the constitutionality of MICRA.

B. *The Court of Appeal Decision*

The Court of Appeal held that offsets were required. Code of Civil Procedure section 877 allows a nonsettling tortfeasor to set off the amount of a jointly liable tortfeasor's settlement against damages awarded at trial. However, tortfeasors are jointly liable for only economic damages. Civil Code section

3

1431.2 imposes "a rule of strict proportionate liability" on noneconomic damages. (*DaFonte v. Up-right, Inc.* (1992) 2 Cal.4th 593, 600.) "[E]ach defendant is liable for only that portion of the plaintiff's noneconomic damages which is commensurate with that defendant's degree of fault for the injury." (*Evangelatos v. Superior Court* (1988) 44 Cal.3d 1188, 1198.)[3] Accordingly, as the Court of Appeal recognized, when a pretrial settlement does not differentiate between economic and noneconomic losses, a postverdict allocation is required because "only the amount attributable to the joint responsibility for economic damages may be used as an offset." (*Ehret v. Congoleum Corp.* (1999) 73 Cal.App.4th 1308, 1320.)

A widely accepted method for making such a postverdict allocation was provided in *Espinoza v. Machonga* (1992) 9 Cal.App.4th 268, 276–277 (*Espinoza*). The percentage of the jury's award attributable to economic damages is calculated and applied to the settlement, yielding the amount that the nonsettling defendant is entitled to offset. (*Espinoza*, at p. 277; see *Jones v. John Crane, Inc.* (2005) 132 Cal.App.4th 990, 1006; *Ehret v. Congoleum Corp*, *supra*, 73 Cal.App.4th at p. 1320; *Poire v. C.L. Peck/Jones Brothers Construction Corp.* (1995) 39 Cal.App.4th 1832, 1838-1839.) Following this formula, the Court of Appeal determined that the percentage of Rashidi's award attributable to economic damages was 8.62 percent ($125,000 in economic damages divided by the total award of $1,450,000). Applying that percentage to the $2 million settlement with Biosphere Medical, the court concluded that $172,400 of the settlement was for

---

[3] "In any action for personal injury, property damage, or wrongful death, based upon principles of comparative fault, the liability of each defendant for non-economic damages shall be several only and shall not be joint. Each defendant shall be liable only for the amount of non-economic damages allocated to that defendant in direct proportion to that defendant's percentage of fault, and a separate judgment shall be rendered against that defendant for that amount." (§ 1431.2, subd. (a).)

4

economic losses, completely offsetting the jury's $125,000 economic damages award. Rashidi does not challenge this aspect of the judgment.

The court performed a different calculation for the Cedars-Sinai settlement. Cedars-Sinai, like Moser and unlike Biosphere Medical, is a health care provider protected by MICRA. Therefore, the court first reduced the jury's award of noneconomic damages to $250,000 under section 3333.2. It added the economic damages of $125,000 to that amount, and determined that economic damages were 33.33 percent of the reduced total award. Applying that ratio to the $350,000 Cedars-Sinai settlement, the court allocated $116,655 of the settlement to economic losses and the remaining $233,345 to noneconomic losses.

The court then considered the intersection of the MICRA cap on noneconomic damages with the rule of section 1431.2 that liability for noneconomic damages is not joint, but several. It acknowledged that ordinarily each health care provider would pay a share of the noneconomic damages based on its own comparative fault. (*Gilman v. Beverly California Corp.* (1991) 231 Cal.App.3d 121, 128–130.) The court also noted that " '[a] defendant bears the burden of proving affirmative defenses and indemnity cross-claims. Apportionment of noneconomic damages is a form of equitable indemnity in which a defendant may reduce his or her damages by establishing others are also at fault for the plaintiff's injuries. . . .' (*Wilson v. Ritto* (2003) 105 Cal.App.4th 361, 369.)"[4]

Here, Moser failed to establish that any other defendant was at fault. Thus, section 1431.2 would require him to pay the entire amount of the $250,000

---

[4] See *Western Steamship Lines, Inc. v. San Pedro Peninsula Hospital* (1994) 8 Cal.4th 100, 118 (indemnity plaintiff bears burden of proving indemnitor's fault); *Conrad v. Ball Corp.* (1994) 24 Cal.App.4th 439, 444 (defendant seeking offset under § 1431.2 must prove each fact essential to recovery).

noneconomic damage award, unless MICRA demanded a different result.  The court noted that nothing in section 3333.2 addresses the proportionate share each health care provider must pay for noneconomic damages.  The statute sets an absolute limit on the total amount of damages for noneconomic loss an injured plaintiff may recover from all defendant health care providers in a single action.  The court observed, "This serves the purpose of MICRA:  'to reduce the cost of medical malpractice litigation, and thereby restrain the increase in medical malpractice insurance premiums.'  (*Fein v. Permanente Medical Group* (1985) 38 Cal.3d 137, 159.)"

Rashidi relied on *Hoch v. Allied-Signal, Inc.* (1994) 24 Cal.App.4th 48 (*Hoch*).  The *Hoch* plaintiffs sought only noneconomic damages at trial after settling with several defendants for a total of $382,500.  The jury returned a damages award of $500,000, and the court entered judgment against the nonsettling defendant for $175,000, consistent with the jury's finding that it was 35 percent at fault.  The trial court refused to set off the settlements against the judgment.  (*Id.* at p. 62.)  On appeal, the nonsettling defendant contended the plaintiffs had obtained a windfall because their total recovery ($557,500, including the settlements), exceeded the amount of damages awarded by the jury.  (*Id.* at p. 66.)

The *Hoch* court disagreed.  It reasoned in part that comparing the total recovery with the jury's award was inappropriate, because " 'settlement dollars are not the same as damages.  Settlement dollars represent a contractual estimate of the value of the settling tortfeasor's liability and may be more or less than the proportionate share of the plaintiff[']s damages.  The settlement includes not only damages, but also the value of avoiding the risk, expense, and adverse public exposure that accompany going to trial.  There is no conceptual inconsistency in allowing a plaintiff to recover more from a settlement or partial settlement than he

6

could receive as damages.' " (*Hoch, supra*, 24 Cal.App.4th at pp. 67-68, quoting *Duncan v. Cessna Aircraft Co.* (Tex. 1984) 665 S.W.2d 414, 431–432.)

The Court of Appeal here was not persuaded. Noting that neither *Hoch* nor *Duncan* involved a cap on damages like MICRA's, the court said, "MICRA does not distinguish between settlement dollars and judgments; it addresses a plaintiff's total recovery for noneconomic losses." The court concluded that MICRA, as the more specific statute, must be read as an exception to section 1431.2's more general limitation on liability for noneconomic damages according to proportionate fault. It modified the judgment to reflect a deduction of $233,345 for the part of the Cedars-Sinai settlement attributable to noneconomic losses, resulting in a total award to Rashidi of $16,655. The court rejected Rashidi's constitutional challenge to MICRA.

We granted Rashidi's petition for review, limiting the question to the propriety of the setoff against noneconomic damages granted by the Court of Appeal.

## II. DISCUSSION

The relevant MICRA provisions are these:

"(a) In any action for injury against a health care provider based on professional negligence, the injured plaintiff shall be entitled to recover noneconomic losses to compensate for pain, suffering, inconvenience, physical impairment, disfigurement and other nonpecuniary damage.

"(b) In no action shall the amount of damages for noneconomic losses exceed two hundred fifty thousand dollars ($250,000)." (§ 3333.2.)

Rashidi argues that the plain terms of section 3333.2 distinguish between "losses" and "damages." He contends he was entitled to recover his "noneconomic losses" without limitation by way of *settlement* under subdivision (a), while his recovery of "damages for noneconomic losses" at *trial* was limited

7

to $250,000 under subdivision (b). If the statute is read this way, the conflict discerned by the Court of Appeal between sections 1431.2 and 3333.2 does not exist. With no cap on settlement recoveries, Rashidi would be entitled to the full amounts of both the noneconomic portion of the Cedars-Sinai settlement, under the *Espinoza* formula, and the capped award of noneconomic damages at trial, for which Moser was solely liable under section 1431.2 because he failed to establish fault on the part of any other defendant.

Moser argues that subdivisions (a) and (b) of section 3333.2 are both concerned with a plaintiff's total recovery in the entire "action." He claims the Legislature used the terms "losses" and "damages" interchangeably. Moser contends that recovery should not vary depending on the number of health care provider defendants, and that permitting a plaintiff to recover more than $250,000 in noneconomic losses by settling with one defendant and going to trial with another would subvert MICRA's purpose.

Rashidi's reading of section 3333.2 is the more reasonable. "Ordinarily, where the Legislature uses a different word or phrase in one part of a statute than it does in other sections or in a similar statute concerning a related subject, it must be presumed that the Legislature intended a different meaning. (*Committee of Seven Thousand v. Superior Court* (1988) 45 Cal.3d 491, 507.)" (*Campbell v. Zolin* (1995) 33 Cal.App.4th 489, 497.) The distinction between "damages," which are capped under subdivision (b) of section 3333.2, and "losses," which are addressed in subdivision (a), is well understood. "Loss" is the generic term, which includes "damage" as a subset. (*Nordahl v. Department of Real Estate* (1975) 48 Cal.App.3d 657, 664.)

"[T]he term 'damages' . . . , both in its legal and commonly understood or ' "ordinary and popular sense," ' is limited to 'money ordered by a court' . . . ." (*County of San Diego v. Ace Property & Casualty Ins. Co.* (2005) 37 Cal.4th 406,

8

417, quoting *Certain Underwriters at Lloyd's of London v. Superior Court* (2001) 24 Cal.4th 945, 969; see 24 Cal.4th at p. 962 [" '[d]amages' exist traditionally inside of court"].) Noneconomic damages, in particular, are ascertainable only at trial. "They are inherently nonpecuniary, unliquidated and not readily subject to precise calculation. The amount of such damages is necessarily left to the subjective discretion of the trier of fact." (*Greater Westchester Homeowners Assn. v. City of Los Angeles* (1979) 26 Cal.3d 86, 103; see *Walnut Creek Manor v. Fair Employment & Housing Com.* (1991) 54 Cal.3d 245, 263 [noneconomic damages "defy a fixed rule of quantification" and are traditionally left to the trier of fact].) Accordingly, the ordinary meaning of the statutory terms indicates that the noneconomic "damages" identified in section 3333.2, subdivision (b) are limited to amounts awarded by a court.

It is clear that the Legislature knew how to include settlement dollars when it designed limits for purposes of medical malpractice litigation reform. Business and Professions Code section 6146, subdivision (a), a MICRA provision capping the contingency fees of plaintiffs' counsel, specifies that its fee limitations "shall apply regardless of whether the recovery is by settlement, arbitration, or judgment . . . ." (See *Roa v. Lodi Medical Group, Inc.* (1985) 37 Cal.3d 920, 923-924.) No similar provision appears in section 3333.2. " 'Where a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject is significant to show that a different intention existed.' " (*City of Port Hueneme v. City of Oxnard* (1959) 52 Cal.2d 385, 395; accord, *Committee of Seven Thousand v. Superior Court*, *supra*, 45 Cal.3d 491, 507.)

Neither the parties nor amici curiae direct us to anything in the legislative history of section 3333.2 that indicates an intent to include settlement recoveries in the cap on noneconomic damages. To the contrary, we have noted that the

9

Legislature had jury awards in mind when it enacted the cap, and that only a collateral impact on settlements was contemplated. In *Fein v. Permanente Medical Group*, *supra*, 38 Cal.3d 137, where the constitutionality of the cap was upheld, this court observed that one problem identified in the legislative hearings was the unpredictable size of large noneconomic damage awards, "resulting from the inherent difficulties in valuing such damages and the great disparity in the price tag which different juries placed on such losses. The Legislature could reasonably have determined that an across-the-board limit would provide a more stable base on which to calculate insurance rates. Furthermore, as one amicus suggests, the Legislature may have felt that the fixed $250,000 limit would promote settlements by eliminating 'the unknown possibility of phenomenal awards for pain and suffering that can make litigation worth the gamble.' " (*Id*. at p. 163.)

Thus, the Legislature was primarily concerned with capricious jury awards when it established the MICRA cap. However, excluding settlement dollars from the cap does not leave settlements unaffected. The prospect of a fixed award of noneconomic damages not only increases plaintiffs' motive to settle, as noted in *Fein*, but also restrains the size of settlements. Settlement negotiations are based on liability estimates that are necessarily affected by the cap. By placing an upper limit on the recovery of noneconomic damages at trial, the Legislature indirectly but effectively influenced the parties' settlement calculations.

Allowing the proportionate liability rule of section 1431.2 to operate in conjunction with the cap on damages imposed by section 3333.2 enhances settlement prospects. As Rashidi points out, if nonsettling defendants were assured of an offset against noneconomic damages regardless of their degree of fault, an agreement with one defendant would diminish the incentive for others to settle. Conversely, if all defendants are responsible for their proportionate share of

10

noneconomic damages, settlements are encouraged. Nonsettling defendants must weigh not only their exposure to liability for noneconomic damages within the limits imposed by section 3333.2, but also the prospect of having to prove the comparative fault of settling defendants in order to obtain a reduction under section 1431.2.

Our reading of the statutes is confirmed by considering an alternate scenario, where it is clear the MICRA cap could not function effectively as a limit on recovery for noneconomic losses by way of settlement. Suppose the Cedars-Sinai and Biosphere Medical settlements in this case were interchanged, so that Cedars-Sinai settled for $2 million and Biosphere Medical for $350,000. In that circumstance, under either of the allocation formulas applied by the Court of Appeal, the portion of the Cedars-Sinai settlement attributable to noneconomic losses would far exceed the $250,000 cap imposed by section 3333.2. Yet no MICRA provision, and no other statute, authorizes a posttrial reduction in the amount of a settlement.

We conclude that the cap imposed by section 3333.2, subdivision (b) applies only to judgments awarding noneconomic damages. Here, the cap performed its role in the settlement arena by providing Cedars-Sinai with a limit on its exposure to liability. Had Moser established any degree of fault on his codefendants' part at trial, he would have been entitled to a proportionate reduction in the capped award of noneconomic damages. The Court of Appeal erred, however, in allowing Moser a setoff against damages for which he alone was responsible.

11

### III.  DISPOSITION

The Court of Appeal's judgment is reversed insofar as it reduced the award of noneconomic damages below $250,000, and affirmed in all other respects.

**CORRIGAN, J.**

**WE CONCUR:**

**CANTIL-SAKAUYE, C. J.**
**BAXTER, J.**
**WERDEGAR, J.**
**CHIN, J.**
**LIU, J.**
**DETJEN, J.\***

---

\*      Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Rashidi v. Moser

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 219 Cal.App.4th 1170
**Rehearing Granted**

_____

**Opinion No.** S214430
**Date Filed:** December 15, 2014

_____

**Court:** Superior
**County:** Los Angeles
**Judge:** Richard L. Fruin, Jr.

_____

**Counsel:**

Balaban & Speilberger, Daniel Balaban, Andrew J. Speilberger; Esner, Chang & Boyer, Stuart B. Esner and Holly N. Boyer for Plaintiff and Appellant.

Thorsnes Bartolotta McGuire and Benjamin I. Siminou for Michael J. Barger as Amicus Curiae on behalf of Plaintiff and Appellant.

Steven B. Stevens for Consumer Attorneys of California as Amicus Curiae on behalf of Plaintiff and Appellant.

Reback, McAndrews, Kjar, Warford & Stockalper, Robert C. Reback; Cole Pedroza, Curtis A. Cole, Kenneth R. Pedroza, Matthew S. Levinson and Cassidy C. Davenport for Defendant and Appellant.

Tucker Ellis, E. Todd Chayet, Rebecca A. Lefler, Lauren H. Bragin and Corena G. Larimer for California Medical Association, California Dental Association, California Hospital Association and American Medical Association as Amici Curiae on behalf of Defendant and Appellant.

Manatt, Phelps & Phillips and Harry W.R. Chamberlain II for Association of Southern California Defense Counsel as Amicus Curiae on behalf of Defendant and Appellant.

Fred J. Hiestand for The Civil Justice Association of California as Amicus Curiae on behalf of Defendant and Appellant.

1

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Stuart B. Esner
Esner, Chang & Boyer
234 East Colorado Boulevard, Suite 750
Pasadena, CA  91101
(626) 535-9860

Kenneth R. Pedroza
Cole Pedroza
2670 Mission Street, Suite 200
San Marino, CA  91108
(626) 431-2787