Filed 4/20/15  Rashidi v. Moser CA2/4
Opinion on remand from Supreme Court

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| HAMID RASHIDI, | B237476 |
| Plaintiff and Appellant, | (Los Angeles County |
| v. | Super. Ct. No. BC392082) |
| FRANKLIN MOSER, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Richard L. Fruin, Judge.  Affirmed as modified.

Reback, McAndrews, Kjar, Warford & Stockalper and Robert C. Reback; Cole Pedroza and Curtis A. Cole for Defendant and Appellant.

Tucker Ellis, E. Todd Chayet, Rebecca A. Lefler, Corena G. Larimer; and Fred J. Hiestand as Amici Curiae on behalf of Defendant and Appellant.

Balan & Speilberger, Daniel Balaban, Andrew J. Spielberger; Esner, Chang & Boyer, Stuart B. Esner and Holly N. Boyer for Plaintiff and Appellant.

_____

After undergoing a surgical procedure, plaintiff Hamid Rashidi filed this action for professional negligence and other claims. He entered into pretrial settlements with defendants Biosphere Medical, Inc. (Biosphere) and Cedars-Sinai Medical Center (Cedars-Sinai), for $2,000,000 and $350,000, respectively. He then proceeded to trial against the remaining defendant, Franklin Moser, the physician who performed the surgical procedure. The jury awarded Mr. Rashidi $1,450,000 against Dr. Moser, consisting of $125,000 for future medical expenses, $331,250 for past noneconomic damages, and $993,750 for future noneconomic damages. In accordance with Civil Code section 3333.2,[1] enacted as part of the Medical Injury Compensation Reform Act of 1975 (MICRA), the trial court capped Mr. Rashidi's award of noneconomic damages at $250,000, but refused to grant offsets based upon the pretrial settlements with Cedars-Sinai and Biosphere Medical.

Both parties appealed from the judgment. Dr. Moser sought offsets based upon the pretrial settlements with the other two defendants. Mr. Rashidi challenged the constitutionality of MICRA. In a prior opinion, we rejected Mr. Rashidi's challenge to the constitutionality of MICRA, and granted Dr. Moser two offsets: The first, based on the settlement with Biosphere Medical, eliminated the economic damages award. The second, based on the settlement with Cedars-Sinai, reduced the noneconomic damages award to $16,655.

Mr. Rashidi petitioned the Supreme Court for review, and his petition was granted only as to the reduction of noneconomic damages. That aspect of our decision was reversed, and in all other respects, the decision was affirmed. (*Rashidi v. Moser* (2014) 60 Cal.4th 718 (*Rashidi*).) In accordance with the Supreme Court's decision, we issue this revised opinion.

---

[1] All further statutory references are to the Civil Code, unless otherwise specified.

**FACTUAL AND PROCEDURAL SUMMARY**

According to the allegations of the charging pleading, in April 2007, 26-year-old Rashidi went to the emergency room at Cedars-Sinai Medical Center with a severe nose bleed. He was treated and discharged. In May 2007, he again went to the emergency room at Cedars-Sinai for a severe nose bleed. This time, he was examined by Dr. Moser, who advised him "to have an operation to treat his nose bleeds and/or arteriovenous malformation."

The operation, an embolization procedure, was performed by Dr. Moser at Cedars-Sinai the same day. It involved insertion of a catheter into an artery in Mr. Rashidi's leg and up into the nose, and injection of embospheres into the catheter to permanently and irreversibly occlude blood vessels. The embosphere microspheres used by Dr. Moser were manufactured by Biosphere Medical, Inc. When Mr. Rashidi regained consciousness, he was blind in one eye. The blindness is permanent.

Mr. Rashidi brought this action against Dr. Moser, Cedars-Sinai, and Biosphere Medical. He alleged causes of action against Dr. Moser and Cedars-Sinai for medical malpractice and medical battery. He also alleged causes of action against Biosphere Medical for product liability based on design or manufacturing defect, failure to warn, negligence per se, breach of express and implied warranty, and misrepresentation. The theory against Biosphere Medical was that the particles it manufactured had specific chemical and elastic physical qualities which enhanced their ability to travel through very small blood vessels and collateral veins, causing a significant risk that they would travel through the blood system to sites other than the intended surgical sites, and that they did so in this case, causing the blindness. Mr. Rashidi alleged that Biosphere failed to disclose this risk, and failed to disclose that the embosphere microspheres were of nonuniform size, instead marketing the product as being of uniform size which allowed for accurate targeting of particular arteries.

Mr. Rashidi settled with Biosphere Medical for $2 million. He settled with Cedars-Sinai Medical Center for $350,000. Each settling defendant moved for a determination that its settlement was in good faith. Notice of each motion was served on

3

all parties, including Dr. Moser. The motions were unopposed and were granted.

Trial proceeded against Dr. Moser, the remaining defendant. The jury found his diagnosis or treatment of Mr. Rashidi was negligent, and that this negligence was a cause of the injury to Mr. Rashidi. It awarded Mr. Rashidi $125,000 present cash value for future medical care resulting from this negligence, $331,250 for past noneconomic damages, and $993,750 for future noneconomic damages. In accordance with MICRA's cap on noneconomic damages, the court reduced the noneconomic damages to $250,000.

Dr. Moser argued there should be an offset against this judgment, based upon the pretrial settlements with Cedars-Sinai and Biosphere Medical that were found to be in good faith. The trial court rejected this argument, finding no basis for allocating the settlement sums between economic and noneconomic damages. As the court explained, the agreements with the settling defendants did not make any such allocation, the affected defendants did not participate in the trial, and the jury was not requested to determine the proportionate fault, if any, of the settling defendants.

Dr. Moser filed a timely notice of appeal. Mr. Rashidi filed a cross-appeal, challenging the constitutionality of MICRA. In our prior opinion, we found the cap on noneconomic damages to be constitutional, and granted Dr. Moser an offset that eliminated the economic damages award, and another offset that reduced the noneconomic damages award to $16,655.

Mr. Rashidi petitioned the Supreme Court for review of two issues: the constitutionality of MICRA; and the offset that reduced the noneconomic damages award. Review was granted only as to the second issue. The Supreme Court reversed the offset against noneconomic damages, which remains capped at $250,000, and affirmed the remainder of our decision. (*Rashidi*, *supra*, 60 Cal.4th 718.) We issue this revised opinion in accordance with the Supreme Court's ruling.

4

## DISCUSSION

### I

In light of the Supreme Court's ruling, we affirm the trial court's denial of an offset against noneconomic damages. (*Rashidi*, *supra*, 60 Cal.4th at pp. 724–728.) The award of noneconomic damages remains capped at $250,000.

Although the settlements paid by Cedars-Sinai and Biosphere Medical exceeded the $1,450,000 jury verdict against Dr. Moser, the liability of the settling defendants, if any, has not been established. Neither Cedars-Sinai nor Biosphere Medical was involved in the trial; no apportionment of their comparative fault, if any, was made by the jury. Dr. Moser is the only defendant whose liability for noneconomic damages has been proven.

As the Supreme Court explained, if Dr. Moser had "established any degree of fault on his codefendants' part at trial, he would have been entitled to a proportionate reduction in the capped award of noneconomic damages." (*Rashidi*, *supra*, 60 Cal.4th at p. 727.) But because that did not occur, he is not entitled to "a setoff against damages for which he alone was responsible." (*Ibid*.; § 1431.2 [liability for noneconomic damages is several only].)[2]

### II

As to economic damages, we previously held that Dr. Moser is entitled to an offset

---

[2] The right to an offset of economic damages involves the interplay between Code of Civil Procedure section 877, which addresses the impact of a good faith settlement on settling and nonsettling tortfeasors, and section 1431.2, which provides that liability for noneconomic damages is several only, in accordance with the percentage of fault.

Section 1431.2 was adopted by the passage of Proposition 51 as part of the Fair Responsibility Act of 1986. It provides in pertinent part: "(a) In any action for personal injury, property damage, or wrongful death, based upon principles of comparative fault, the liability of each defendant for non-economic damages shall be several only and shall not be joint. Each defendant shall be liable only for the amount of non-economic damages allocated to that defendant in direct proportion to that defendant's percentage of fault, and a separate judgment shall be rendered against that defendant for that amount."

5

based on the settlement paid by Biosphere Medical. That aspect of our prior decision, which was not challenged in Mr. Rashidi's petition for review, was affirmed. (*Rashidi, supra,* 60 Cal.4th at pp. 722–723, 728.) Our analysis, as stated in the prior opinion, is set forth below.

Code of Civil Procedure section 877 describes the impact of a good faith settlement on settling and nonsettling tortfeasors: "Where a release, dismissal with or without prejudice, or a covenant not to sue or not to enforce judgment is given in good faith before verdict or judgment to one or more of a number of tortfeasors claimed to be liable for the same tort, . . . it shall have the following effect: [¶] (a) It shall not discharge any other such party from liability unless its terms so provide, but it shall reduce the claims against the others in the amount stipulated by the release, the dismissal or the covenant, or in the amount of the consideration paid for it, whichever is the greater. [¶] (b) It shall discharge the party to whom it is given from all liability for any contribution to any other parties."

With respect to economic damages, codefendants are jointly and severally liable. (*Evangelatos v. Superior Court* (1988) 44 Cal.3d 1188, 1198.) Section 1431.2 "retains the joint liability of all tortfeasors, regardless of their respective shares of fault, with respect to all objectively provable expenses and monetary losses." (*DaFonte v. Up-Right, Inc.* (1992) 2 Cal.4th 593, 600.)

As we have noted, in this case there was no allocation between economic and noneconomic damages in either of the good faith settlements.[3] "The absence of a court approved pretrial allocation of a settlement between economic and noneconomic damages does not preclude a court from making a postverdict allocation. [Citations.] Some allocation of an undifferentiated settlement between economic and noneconomic damages is required because only the amount attributable to the joint responsibility for

---

[3] Dr. Moser did not object to the good faith determination as to either settlement, nor did he ask the court at the time of either good faith hearing to make a determination as to the allocation of the settlement between economic and noneconomic damages.

economic damages may be used as an offset." (*Ehret v. Congoleum Corp.* (1999) 73 Cal.App.4th 1308, 1320.)

In the absence of a pretrial allocation, courts have developed a method for applying the allocations of the jury verdict to the settlements. (*Espinoza v. Machonga* (1992) 9 Cal.App.4th 268, 276–277; see also *Poire v. C.L. Peck/Jones Brothers Construction Corp.* (1995) 39 Cal.App.4th 1832, 1838–1839; *Greathouse v. Amcord, Inc.* (1995) 35 Cal.App.4th 831, 840–841.) The method is to allocate the settlements so that they mirror the jury's apportionment of economic and noneconomic damages. (*Jones v. John Crane, Inc.* (2005) 132 Cal.App.4th 990, 1006.) This is done by calculating the percentage of the award attributable to economic damages in relationship to the entire award, and then applying that same percentage to the settlement. (*Espinoza v. Machonga, supra,* at p. 277.) This will yield the portion of the settlement attributable to economic damages, for which the nonsettling defendant is entitled to an offset. (*Rashidi, supra*, 60 Cal.4th at pp. 722–723.)

The jury awarded Mr. Rashidi a total of $1,450,000 against Dr. Moser. Of this, $125,000 was for economic damages. The percentage of the award attributable to economic damages is 8.62 percent. Applying that percentage to the $2 million settlement with Biosphere Medical, we calculate that $172,400 of that settlement should be allocated to economic damages. Under section 877, Dr. Moser is entitled to a reduction of the claim against him in that amount. Since the jury's verdict for economic damages against Dr. Moser was only $125,000, the Biosphere Medical settlement completely offsets that portion of Dr. Moser's obligation to Mr. Rashidi. The judgment should reflect this offset. (*Rashidi, supra,* 60 Cal.4th at pp. 722–723, 728.)

### III

In the cross appeal, Mr. Rashidi challenged the constitutionality of MICRA. In our prior opinion, we considered and rejected this contention. The Supreme Court denied review of that issue, which was affirmed. (*Rashidi, supra,* 60 Cal.4th at p. 728.) Our analysis, taken from the prior opinion, is restated below.

As the court observed in *Stinnett v. Tam* (2011) 198 Cal.App.4th 1412, 1419, "After MICRA's enactment, judicial challenges to various provisions of MICRA were abundant, but unsuccessful." We find settled, well-reasoned authority rejecting each of the constitutional claims.

Mr. Rashidi's first claim is that the $250,000 damages cap violates a plaintiff's constitutional right to a jury trial. In *Yates v. Pollock* (1987) 194 Cal.App.3d 195, 200, the court characterized this same claim as "an indirect attack upon the Legislature's power to place a cap on damages." In *American Bank & Trust Co. v. Community Hospital* (1984) 36 Cal.3d 359, 368–369 (*American Bank*) and *Fein v. Permanente Medical Group* (1985) 38 Cal.3d 137, 158 (*Fein*), the Supreme Court confirmed that a plaintiff has no vested property right in a particular measure of damages, and the Legislature has broad authority to modify the scope and nature of such damages. "'So long as the measure is rationally related to a legitimate state interest, policy determinations as to the need for, and the desirability of, the enactment are for the Legislature.'" (*Fein, supra,* at p. 158, quoting *American Bank, supra,* at pp. 368–369.) The Supreme Court found that the $250,000 ceiling on the recovery of noneconomic damages is rationally related to the objective of reducing the costs of medical malpractice litigation and in that way restraining the costs of medical malpractice insurance premiums. (*Id.* at p. 159.) The court found no California case suggesting "that the right to recover for noneconomic injuries is constitutionally immune from legislative limitation or revision." (*Id.* at pp. 159–160.)

In *American Bank, supra,* 36 Cal.3d at page 376, the court explained that the constitutional guarantee of jury trial operates at the time of trial to require submission of certain issues to the jury. Once a verdict has been returned, the effect of the constitutional provision is to prohibit improper interference with the jury's decision. There is no such improper interference under MICRA. The issue of damages is still submitted to the jury. The subsequent reduction of the damages awarded—either under the periodic payment provision challenged in *American Bank* (Code Civ. Proc., § 667.7), or under the damages cap challenged in this case—does not improperly interfere with the

8

jury's decision. (*American Bank*, *supra*, 36 Cal.3d at pp. 376–377; *Yates v. Pollock, supra,* 194 Cal.App.3d at p. 200.)

Next, Mr. Rashidi claims the damages cap violates equal protection because it "arbitrarily imposes a one-size-fits-all" $250,000 limit on the noneconomic damages a plaintiff may receive in a medical malpractice action, regardless of the jury's findings as to the extent and severity of a plaintiff's injuries. In *Fein, supra*, 38 Cal.3d at pages 161–162, the Supreme Court considered and rejected a similar claim. The Legislature had a rational basis for enacting the damages limitation, and sought to obtain the desired cost savings only by limiting noneconomic damages. This limitation applies equally to all plaintiffs, without precluding the more seriously injured plaintiff from obtaining complete compensation for out-of-pocket medical expenses or lost earnings. (*Id.* at p. 162; *Stinnett v. Tam, supra,* 198 Cal.App.4th at p. 1425.) Mr. Rashidi's argument regarding the need to adjust the MICRA cap so that it is indexed for inflation should be directed to the Legislature. (See *Stinnett v. Tam, supra,* at p. 1432.)

Mr. Rashidi also argues that section 3333.2 violates the separation of powers by requiring the courts to enter judgment in an amount unrelated to the facts found by the jury. The Supreme Court has recognized the authority of the Legislature to limit the recovery of noneconomic damages. (*Fein, supra,* 38 Cal.3d at pp. 157–160.) The Legislature possesses broad authority to establish or to abolish tort causes of action. (*Cheong v.* Antablin (1997) 16 Cal.4th 1063, 1069.) Although that authority necessarily affects the work of the judiciary, it does not impermissibly impinge on that separate branch of government. We find no violation of the separation of powers by the requirement that the court reduce awards of noneconomic damages to comply with the MICRA ceiling.

## DISPOSITION

The judgment is modified to reflect an offset against economic damages in the amount of $125,000, thus satisfying the economic damages award.  In all other respects, the judgment is affirmed.  The parties are to bear their own costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


EPSTEIN, P. J.


We concur:



WILLHITE, J.



MANELLA, J.

10