Filed 7/24/15  Lora v. Lancaster Hospital Corp. CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| DIORESLY LORA,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>LANCASTER HOSPITAL CORPORATION,<br><br>    Defendant and Respondent. | B250519<br><br>(Los Angeles County<br>Super. Ct. No. MC023074)<br><br>MODIFICATION OF OPINION<br><br>[NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on July 22, 2015, be modified as follows:

The following name is to be added to the attorney listing:

Fred J. Hiestand, Civil Justice Association of California as Amicus Curiae on behalf of Defendant and Respondent.

_____

WILLHITE, Acting P.J.          MANELLA, J.          COLLINS, J.

Filed 7/22/15  Lora v. Lancaster Hospital Corp. CA2/4 (unmodified version)

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| DIORESLY LORA,<br><br>     Plaintiff and Appellant,<br><br>     v.<br><br>LANCASTER HOSPITAL CORPORATION,<br><br>     Defendant and Respondent. | B250519<br><br>(Los Angeles County<br>Super. Ct. No. MC023074) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Victor E. Chavez, Judge.  Affirmed.

Law Offices of Bruce G. Fagel & Associates, Bruce G. Fagel, Richard P. Akemon, and Eduardo J. Ascencio, Smith & McGinty, Daniel U. Smith, for Plaintiff and Appellant.

Greenberg Traurig, Karin L. Bohmholdt, Kendyl T. Hanks, and Jay Yagoda, for Defendant and Respondent.

Cole Pedroza, Curtis A. Cole as Amicus Curiae on behalf of Defendant and Respondent.

Plaintiff and appellant Dioresly Lora brought a medical malpractice claim against defendant and respondent Lancaster Hospital Corporation dba Palmdale Regional Medical Center (Palmdale). A jury found for Lora and awarded her approximately $12 million in past and future economic damages ($6.6 million in present cash value) and approximately $3 million in noneconomic damages. On Palmdale's motion, the court reduced Lora's noneconomic damages to $250,000, the maximum allowable under the Medical Injury Compensation Reform Act of 1975 (MICRA) (Stats. 1975, 2d Ex. Sess. 1975-1976, ch. 1, § 26.6, pp. 3975-3997; Civ. Code, § 3333.2).[1]

In the briefing she submitted in connection with this appeal, Lora challenged the constitutionality of the $250,000 cap on noneconomic damages. She contend**ed** that the cap violates the equal protection clause because the conditions prompting its enactment no longer exist and because inflation has eroded its value. She also contended that the cap deprives her and other medical malpractice victims of their constitutional right to a jury trial. Our Supreme Court and sister courts of appeal have considered and rejected these very arguments, which Lora unequivocally abandoned during oral argument in favor of an unbriefed request that we interpret MICRA to account for inflation. We reject the arguments Lora raised in her briefs, decline to consider the new theory she raised belatedly at oral argument, and affirm the judgment of the trial court.

## FACTUAL AND PROCEDURAL SUMMARY

According to the allegations of the charging pleading, Lora was 24 years old when she sought treatment for asthma at Palmdale's telemetry unit in November 2011. Lora went into respiratory arrest during treatment and was found with no pulse or blood pressure. She was resuscitated but sustained severe neurological damage.

By and through her mother and guardian ad litem Hortensia Lora, Lora brought a medical malpractice suit against Palmdale and prevailed after a jury trial. As is pertinent

---

[1] All further statutory references are to the Civil Code unless otherwise indicated.

here, the jury awarded her $3,072,856.00 in noneconomic damages for past and future pain and suffering by special verdict on March 22, 2013.

Palmdale subsequently filed a motion pursuant to MICRA, section 3333.2, to reduce Lora's noneconomic damages to $250,000. In a written opposition filed prior to and in anticipation of Palmdale's motion, Lora objected that the cap on noneconomic damages deprived her of her constitutional rights to a jury trial and equal protection of the laws. She also requested an evidentiary hearing so she could present evidence in support of her argument that the damages cap no longer had a rational basis in light of changed conditions. (See *Stinnett v. Tam* (2011) 198 Cal.App.4th 1412, 1434 (conc. & dis. opn. of Dawson, J.) (*Stinnett*).) Lora attached to her filing a declaration from economist Peter Formuzis, Ph.D., who testified that inflation had eroded the purchasing power of $250,000 in 1975 dollars to a mere $57,472 in 2013 dollars. Formuzis also testified that if the $250,000 cap imposed in 1975 had been indexed to inflation, it would be worth $1,087,477 in 2013 dollars.

Lora filed a second opposition document after Palmdale filed its motion. In it, she argued that her noneconomic damages "should not be reduced to the $250,000 cap per Civil Code § 3333.2, but only to $1,076,000 based on the declaration of Dr. Formuzis."[2] Lora clarified that she was "not requesting that the court invalidate MICRA or section 3333.2 entirely." Instead, she "request[ed] the court to interpret the statute to mean that any limitation in non-economic damages should be in present value since the legislature would not have intended a limitation placed on non-economic damages 38 years ago to be worth less and less each year." Lora also contended that Proposition 103, a measure passed in 1988 that "prohibits the Insurance Commissioner from approving rates that are excessive, inadequate, or unfairly discriminatory, and from allowing such rates to remain in effect" (*Chan v. Curran* (2015) 237 Cal.App.4th 601, 610, (*Chan*); see also Cal. Code

---

[2] Formuzis stated that the $250,000 damages cap would be equivalent to $1,087,477 in 2013 dollars. Lora's other expert declarant, actuary Allan I. Schwartz, stated that the cap would be "about $1,060,000" in 2012 dollars if adjusted for inflation. The source of the amount Lora requested, $1,076,000, is not clear.

Regs. tit. 10, §§ 2641.1-2648.4), ensures that a medical malpractice insurance crisis like the one that led to the passage of MICRA will not recur. She attached a lengthy declaration from actuary Allan I. Schwartz, stipulations and consent orders between the Insurance Commissioner and various medical malpractice insurers, and profitability reports for medical malpractice insurers for the years 1993-2010.

Lora subsequently filed a request for judicial notice. She provided nine additional documents from the Department of Insurance that in her view were relevant both to "her opposition to the reduction of her non-economic damages, and her request that non-economic damages be expressed in present value." She contended that the documents – letters, decisions, and stipulations involving the Department of Insurance – demonstrated that section 3333.2 "no longer has a "reasonably conceivable" "rational basis" that is "plausible" because the rational basis for section 3333.2's [*sic*] was removed in 1988 when Proposition 103 gave the Insurance Commissioner the power to reduce "excessive" rates and thereby protect insureds (doctors, hospitals and other healthcare providers) from skyrocketing rates." Palmdale opposed Lora's requests to reduce her damages to $1,076,000 and for judicial notice.

The parties appeared in court on May 9, 2013. Lora reiterated to the court that she "is not asking you to ignore or strike down the MICRA statute that reduces the noneconomic damages to a maximum of $250,000. [¶] What plaintiff is asking you to do is what courts are always asked to do when looking at a law passed by the Legislature. We are asking you to interpret that law in a way that makes both legal and moral sense." She argued that the Legislature "could not have intended that in placing such an artificial cap on the value of human life, that such a value would decrease each year such that today that value is less than 25 percent of the original cap." She implored the court, "So finding that amount in reducing the noneconomic damages from $3,000,000 to 1,000,000, you are still following the requirements of MICRA, but you are interpreting the law in a way that makes sense, going back 38 years and saying Legislature, if you are going to pass this kind of cap and ultimately that places a value on human life in medical malpractice cases, it much [*sic*] be indexed for inflation. And if it wasn't by the

4

Legislature, then it needs to be by the court; otherwise, what we have is every year the value of human life decreases."

The court stated, "I regrettably agree with your position and cannot find the way you suggest." It continued, "I have to follow the law, and I think - - as I see the law, that's the law. [¶] The Legislature is the place this should be changed, not here, not in this court unfortunately." The court accordingly granted Palmdale's motion and reduced Lora's noneconomic damages to $250,000 pursuant to section 3333.2. It did not address Lora's requests for an evidentiary hearing and judicial notice, and Lora did not mention them.

Lora timely appealed.

## DISCUSSION

### I.    Issues Presented on Appeal

In her briefing, Lora presented two issues for consideration on appeal. She characterized these issues as follows: (1) "Is the discrimination inflicted by MICRA's $250,000 noneconomic damages cap on severely injured medical malpractice plaintiffs an unconstitutional denial of equal protection of the law due to a lack of a rational basis because the modest increases in medical malpractice insurance rates—regulated since 1988 by the Insurance Commissioner under Proposition 103—no longer threaten the availability of health care in California?" and (2) "Does MICRA's $250,000 noneconomic damages cap, fixed since 1975, by reducing noneconomic damages to $250,000—without regard to the jury's evidence-based award of damages and without offering plaintiffs the alternative of a new trial—deny medical malpractice victims their "inviolate" constitutional right to a jury determination of damages?" At the conclusion of both her opening and reply briefs, she requested that we "declare the damages cap in section 3333.2 unconstitutional and modify the judgment to include the jury's award of noneconomic damages."

Palmdale contended that Lora should not be permitted to raise these issues because she abandoned them below. Specifically, Palmdale argued that Lora jettisoned the constitutional challenges in favor of asking the trial court to "interpret" section 3333.2 as

5

though the damages cap were indexed to inflation.  In the alternative, Palmdale argued that Lora's constitutional arguments failed on the merits. Palmdale came to oral argument prepared to address the merits of Lora's constitutional arguments.

So did we.  At oral argument, however, Lora indicated that she no longer wished to argue that section 3333.2 be declared unconstitutional.  Instead, she sought to resurrect the alternate request she made in the trial court: that we "interpret" section 3333.2 to account for inflation.  She contended that she preserved the argument by discussing *Salgado v. County of Los Angeles* (1998) 19 Cal.4th 629 (*Salgado*) in her reply brief.

As a general matter, "one cannot raise on appeal material issues which he abandons at the trial level as a matter of strategy and purely for his own advantage." (*Carmichael v. Reitz* (1971) 17 Cal.App.3d 958, 969.)  The record strongly suggests such tactical maneuvering here. Lora preemptively raised her constitutional challenges before Palmdale filed its motion to reduce her noneconomic damages.  She then altered her position to request an inflation-adjusted reduction after Palmdale filed its motion and the court suggested during a hearing that it was inclined to grant the motion despite its disagreement with MICRA.  Lora reiterated her new position at a later hearing, during which she urged the court to "intepret[ ] the law in a way that makes sense" by reducing her damages to the inflation-adjusted amount of $1,076,000.  Lora made no mention of her jury trial right, the equal protection clause, or her earlier claims that section 3333.2 was unconstitutional.  Instead, she presented the issue exclusively in terms of the economic value of human life.  She abandoned that characterization in her briefing in favor of pursuing the constitutional claims she originally asserted, then did an about-face at oral argument by returning to the interpretation argument she entirely failed to brief. (The two extended quotations from *Salgado* she included in her reply brief have nothing to do with her "interpretation" argument and would not have preserved it even if they did. It is well settled that points raised for the first time in a reply brief will not be considered unless good cause is shown.  (E.g., *Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 65; *Webber v. Clarke* (1887) 74 Cal. 11, 13; see also 9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 723, pp. 790-791.)  Good cause certainly was not shown in this case.)

6

Lora's continually shifting legal theories undoubtedly have presented Palmdale with a moving target. We are not unsympathetic to Palmdale's plight and indeed have some inclination to simply dismiss Lora's appeal in light of her unequivocal abandonment of the issues the parties briefed. We conclude it is the better course, however, to address the constitutional challenges the parties briefed. (See *San Mateo Union High School District v. County of San Mateo* (2013) 213 Cal.App.4th 418, 436.) Our review of these purely legal issues is de novo. (See, e.g., *Finberg v. Manset* (2014) 223 Cal.App.4th 529, 532.)

## II. MICRA & Section 3333.2

"In May 1975, the Governor—citing serious problems that had arisen throughout the state as a result of a rapid increase in medical malpractice insurance premiums—convened the Legislature in extraordinary session to consider measures aimed at remedying the situation. In response, the Legislature enacted the Medical Injury Compensation Reform Act of 1975 (MICRA) . . . , a lengthy statute which attacked the problem on several fronts." (*American Bank & Trust Co. v. Community Hospital* (1984) 36 Cal.3d 359, 363 (*American Bank*).) MICRA "reflects a strong public policy to contain the costs of malpractice insurance by controlling or redistributing liability for damages, thereby maximizing the availability of medical services to meet the state's health care needs." (*Western Steamship Lines, Inc. v. San Pedro Peninsula Hospital* (1994) 8 Cal.4th 100, 112.)

One of MICRA's provisions, now codified at section 3333.2, "made changes in existing tort rules in an attempt to reduce the cost of medical malpractice litigation, and thereby restrain the increase in medical malpractice insurance premiums." (*Fein v. Permanente Medical Group* (1985) 38 Cal.3d 137, 159 (*Fein*).) Section 3333.2 provides in pertinent part "(a) In any action for injury against a health care provider based on professional negligence, the injured plaintiff shall be entitled to recover noneconomic losses to compensate for pain, suffering, inconvenience, physical impairment, disfigurement and other nonpecuniary damage. [¶] (b) In no action shall the amount of damages for noneconomic losses exceed two hundred fifty thousand dollars ($250,000)."

7

## III.    Equal Protection

Lora contends that section 3333.2 violates her constitutional right to equal protection of the laws.  (Cal. Const., art. I, § 7, subd. (a).)  She argues that the damages cap, which in her view discriminates between severely injured medical malpractice plaintiffs and all others, currently lacks a rational basis because the insurance crisis that led to the passage of MICRA has been abated by changed conditions, primarily the 1988 enactment of Proposition 103.  We disagree.

"'Where, as here, a disputed statutory disparity implicates no suspect class or fundamental right,  "equal protection of the law is denied only where there is no 'rational relationship between the disparity of treatment and some legitimate governmental purpose.'"'  [Citations.]"  (*Chan*, *supra*, 237 Cal.App.4th at p. 611.)  Under the rational relationship test, there simply must be plausible reasons for the challenged classification; it is not constitutionally relevant whether the reasoning in fact motivated the Legislature.  (*Id.* at p. 614.)  Parties challenging legislation under the equal protection clause may introduce evidence supporting their claim that the provision is irrational, but they cannot prevail if the question of rationality is at least debatable.  (*Stinnett*, *supra*, 198 Cal.App.4th at p. 1427.)  "Thus, '[t]o mount a successful rational basis challenge, a party must "'negative every conceivable basis'" that might support the disputed statutory disparity.  [Citations.]  If a plausible basis exists for the disparity, courts may not second-guess its "'wisdom, fairness, or logic.'"  [Citations.]'  [Citation.]"  (*Chan*, *supra*, 237 Cal.App.4th at p. 613.)

The Supreme Court upheld section 3333.2's damages cap against an equal protection challenge in 1985.  (See *Fein*, *supra*, 38 Cal.3d 137.)  The court reasoned that "the Legislature retains broad control over *the measure*, as well as *the timing*, of damages that a defendant is obligated to pay and a plaintiff is entitled to receive, and that the Legislature may expand or limit recoverable damages so long as its action is rationally related to a legitimate state interest."  (*Id*. at p. 158 [emphases in original].)  In determining whether the requisite rational relationship existed, the court conducted a "serious and genuine judicial inquiry into the correspondence between the classification

8

and the legislative goals." (*Id.* at p. 163.) The court concluded that section 3333.2 was rationally related to legitimate state interests, namely reducing the costs of medical malpractice insurance and concomitant litigation. (*Id.* at pp. 158-159.) The court recognized that section 3333.2 in some cases "will result in the recovery of a lower judgment than would have been obtained before the enactment of the statute," but emphasized that the damages cap reached only noneconomic damages and left other damages unaffected. (*Id.* at p. 159.) Moreover, it observed that "no California case . . . has ever suggested that the right to recover for such noneconomic injuries is constitutionally immune from legislative limitation or revision." (*Id.* at pp. 159-160.)

Lora acknowledges *Fein*'s holding but contends it is no longer controlling in light of the 1988 enactment of Proposition 103, the purpose of which was to ensure that "'insurance is fair, available, and affordable for all Californians'" (*Calfarm Insurance Co. v. Deukmejian* (1989) 48 Cal.3d 805, 813 (*Calfarm*)), and the diminution in the cap's real value due to inflation. That is, she contends that changed circumstances have rendered section 3333.2 unconstitutional since *Fein* was decided in 1985. Two of our sister courts of appeal recently have considered and rejected virtually identical arguments. (See *Stinnett*, *supra*, 198 Cal.App.4th at pp. 1427-1432; *Chan*, *supra*, 237 Cal.App.4th at pp. 611-621.) We find these decisions to be well-reasoned and persuasive.

In *Stinnett*, *supra*, 198 Cal.App.4th at p. 1427, the plaintiff argued that section 3333.2 was no longer rational because medical malpractice insurance rates were no longer "skyrocketing" or threatening the availability of health care, and because Proposition 103 empowered the Insurance Commissioner to regulate and prescribe malpractice insurance rates. The court of appeal acknowledged that "'"the constitutionality of a statute predicated upon the existence of a particular state of facts may be challenged by showing to the court that those facts have ceased to exist."' [Citations.]" (*Id.* at p. 1428.) It concluded that the principle of changed circumstances was not applicable, however, because the Supreme Court in *Fein* "did not find section 3333.2 constitutional based on a particular set of facts, i.e., whether a medical

9

malpractice insurance crisis actually existed, but instead did so based on the Legislature's power to determine whether such a crisis existed and to craft remedies to solve the crisis the Legislature found." (*Id*. at p. 1430.)

The *Stinnett* court also substantively rejected the plaintiff's implicit contentions that section 3333.2 was obsolete or no longer necessary to reduce medical malpractice costs. Relying on *American Bank*, *supra*, 36 Cal.3d at p. 374, the court explained that "'the constitutionality of a measure under the equal protection clause does not depend on a court's assessment of the empirical success or failure of the measure's provisions[,]' and the equal protection clause is satisfied by the court's conclusion that, from the information before it, 'the Legislature could rationally have decided that the enactment might serve its insurance cost reduction objective.'" (*Stinnett*, *supra*, 198 Cal.App.4th at p. 1430.) The court further explained that the circumstances in which a court may deem a law unconstitutional in light of changed conditions are "'quite narrow' (*Santa Monica Beach, Ltd. v. Superior Court* (1999) 19 Cal.4th 952, 973 [])" (*Stinnett*, *supra*, 198 Cal.App.4th at p. 1430), and suggested that the plaintiff would be better served by addressing her concerns to the Legislature, as "it is not the judiciary's function to determine when constitutionally valid legislation has served its purpose." (*Id.* at pp. 1430-1431; see also *id.* at p. 1428 ["Generally, modification or repeal of a statute made obsolete by virtue of changed conditions is a legislative, not a judicial, prerogative."].) The court distinguished *Brown v. Merlo* (1973) 8 Cal.3d 855, 858-859 (*Brown*), *Skalko v. City of Sunnyvale* (1939) 14 Cal.2d 213, 216, *Calfarm*, *supra*, 48 Cal.3d at pp. 817-818, 820-821, and *Sonoma County Organization of Public Employees v. County of Sonoma* (1979) 23 Cal.3d 296, 314 (*Sonoma County*), all of which invalidated statutes as unconstitutional, and ultimately found *Fein*'s holding that the cap did not violate equal protection enduring and controlling. (*Id.* at p. 1431.)

The plaintiff's contentions that inflation had eroded the cap did not persuade the court otherwise. (See *Stinnett*, *supra*, at p. 1432.) The court again noted that *Fein* was controlling. (*Ibid.*) It further determined that "[t]he statute does not address purchasing power; instead, it addresses the maximum dollar amount of noneconomic damages a

10

plaintiff may recover in an action against a health care provider based on professional negligence, which is the same amount for every such plaintiff." (*Ibid.*) The court explained that "[t]he fact that Stinnett might prefer a different statute, indexed for inflation, does not render unconstitutional the statue the Legislature enacted," and reiterated that the Legislature, not the court, is the appropriate forum at which to direct such contentions. (*Ibid.*)

Nearly four years later, the Court of Appeal for the First Appellate District arrived at the same conclusions. In *Chan*, *supra*, 237 Cal.App.4th at p. 606, as in *Stinnett* and the instant case, the plaintiff argued that *Fein* was no longer controlling because "she has shown there no longer is a medical malpractice insurance 'crisis' and therefore the rationale for the cap (indeed, for all of MICRA) no longer exists." She introduced evidence from an economist showing that inflation eroded the cap's real value, as well as a declaration from an actuary stating that medical malpractice insurance premiums have increased an average of only one percent per year since the passage of Proposition 103. (See *Id*. at pp. 609-610.) The court was not persuaded that this evidence of changed circumstances was sufficient to upend *Fein* as "the controlling authority as to the constitutional validity of MICRA's noneconomic damages cap on equal protection grounds." (*Id.* at p. 621.)

The *Chan* court began its analysis with the observation that "[t]he role of 'changed circumstances' in constitutional analysis is fraught with institutional tension and analytical difficulties." (*Chan*, *supra*, 237 Cal.App.4th at p. 613.) It explained, "'It is not . . . easy for courts to step in and say what was rational in the past has been made irrational by the passage of time, change of circumstances, or the availability of new knowledge. Nor should it be. Too many issues of line drawing make such judicial decisions hazardous. What degree of legislative action, or of conscious inaction, is needed when that (uncertain) point is reached? These difficulties—and many others— counsel restraint, and do so powerfully.' [Citations.]" (*Id*. at pp. 613-614.) The court further emphasized that the fundamental principles of rational basis review, which provide that classifications may be based on ""rational speculation unsupported by

11

evidence or empirical data,"'""" and are permissible so long as they are rationally related to any "'"'realistically conceivable legislative purpose,"'""" also severely circumscribe the situations in which changed circumstances may render a statute unconstitutional. (*Id*. at p. 614.)

From that premise, the court deemed misplaced the plaintiff's reliance on *Brown*, *supra*, 8 Cal.3d 855, which invalided California's guest statute on the basis of changed circumstances. (*Chan*, *supra*, 237 Cal.App.4th at pp. 614-616.) The court concluded that "MICRA is not afflicted with the peculiar characteristics of the antiquated guest statutes that colored the equal protection analys[i]s in *Brown* . . . ." (*Id.* at p. 616.) "First, MICRA's noneconomic damages cap does not wholly deny compensation to medical malpractice plaintiffs—there is no limitation on the recovery of actual damages (i.e., medical costs and lost wages) and there is only a partial limitation on the recovery of noneconomic damages. Second, MICRA is not based on vestigial analogies to archaic law. And third, while there is a significant debate about the wisdom and efficacy of damages caps in controlling medical malpractice insurance costs, it *is* a matter of legitimate debate." (*Ibid.*) ([Emphasis in original].) The court also distinguished *Calfarm*, *supra*, 48 Cal.3d 805, and *Sonoma County*, *supra*, 23 Cal.3d 296, as inapposite because they did not involve a "changed cirumstances" analysis. (See *Chan*, *supra*, 237 Cal.App.4th at p. 617, fn 8.)

The court found it "significant" that the *Fein* majority "disregarded two objections by the dissent which lie at the heart of the equal protection challenge that Chan [and Lora] now advance[]," namely inflation's inevitable diminution of the cap's value and the "'fading into the past'" of the medical malpractice insurance crisis. (*Chan*, *supra*, 237 Cal.App.4th at p. 616, citing *Fein*, *supra*, 38 Cal.3d at pp. 169, 171 (dis. opn. of Bird, C.J.).) In the court's view, the emergence and rejection of these concerns at the time of *Fein*'s issuance undermined Chan's contention that the circumstances warranting the damages cap were "'totally altered.'" (*Chan*, *supra*, 237 Cal.App.4th at p. 617.)

The court also found wanting Chan's contention – and evidence – that Proposition 103 supplanted the need for the damages cap. The court explained Proposition 103 does

not prohibit increases in malpractice insurance rates or require low rates; rather, its purpose is to ensure that rates are maintained at levels that fairly reflect insurers' costs. (*Chan*, *supra*, 237 Cal.App.4th at p. 617.) Proposition 103 does not limit medical costs and therefore "provides no assurance medical malpractice rates would stay in check should MICRA's noneconomic damages cap be removed." (*Id.* at pp. 617-618.) Thus, by relying on Proposition 103, Chan did not demonstrate "that the fundamentals of our health care system and its interfacewith our tort and insurance systems that gave rise to the declared insurance crisis [ ] no longer exist, rendering MICRA's provisions of no plausible utility" in abating or preventing a medical malpractice insurance crisis. (*Id.* at pp. 618-619.) The recent United States Supreme Court case *Shelby County v. Holder* (2013) ___ U.S. ___ [133 S. Ct. 2612] did not affect the court's conclusion, because the analysis in that case was predicated on principles of federalism and addressed conditions that were "demonstrably and irrefutably" changed. (See *Chan*, *supra*, 237 Cal.App.4th at p. 620.) By contrast, the *Chan* court found Chan had presented no evidence "that the factors that precipitated the medical malpractice insurance crisis addressed by MICRA no longer exist and the act in no plausible way continues to advance the Legislature's purpose in enacting it." (*Ibid.*)

The court was not persuaded by Chan's citations to extra-state case law rulings that damages caps bear no rational relationship to controlling insurance costs, including *Estate of McCall v. United States* (Fla. 2014) 134 So.3d 894, 910. (*Chan*, *supra*, 237 Cal.App.4th at pp. 620-621.) The court noted that courts in numerous other states have upheld damages caps. (*Ibid.*) The court further noted that such a split in authority existed when *Fein* was decided and that the *Fein* court nonetheless had concluded that "no principle of California or federal constitutional law prohibits the Legislature from 'limiting the recovery of damages in a particular setting in order to further a legitimate state interest.' ([*Fein*, *supra*, 38 Cal.3d at p. 161].)" (*Chan*, *supra*, 237 Cal.App.4th at p. 621.) Like the *Stinnett* court, the *Chan* court concluded that *Fein* remained controlling and precluded the plaintiff's equal protection challenge. (*Ibid.*)

13

We see no basis on which to distinguish the instant case from *Stinnett* and *Chan*, which thoroughly addressed and in our view correctly rejected every equal protection argument Lora presently raises.

Like the plaintiffs in *Stinnett* and *Chan*, Lora analogizes her case to *Brown*, *supra*, 8 Cal.3d 855, *Calfarm*, *supra*, 48 Cal.3d 805, and *Sonoma County*, *supra*, 23 Cal.3d 296. We agree with our colleagues in the First and Fifth Districts that these cases are inapposite. As the *Can* court explained, neither *Calfarm* nor *Sonoma County* involved a challenge to a statute that previously had survived constitutional scrutiny. (See *Chan*, *supra*, 237 Cal.App.4th at p. 617, fn. 8.) *Brown*, which did, involved vastly different circumstances–guest statutes that prohibited automobile passengers from suing negligent host drivers, "absurd and illogical" statutory loopholes (*Brown*, *supra*, at p. 860), and "sea changes in the common law of torts and the availability of automobile liability insurance" (*Chan*, *supra*, 237 Cal.App.4th at p. 615.) Notably, *Fein* distinguished *Brown* as well. (See *Fein*, *supra*, 38 Cal.3d at p. 163.)

Lora also makes the familiar contention that the "crisis" of "skyrocketing" medical malpractice insurance rates no longer exists today and therefore cannot furnish a rational basis for the damages cap. Specifically, she contends that Proposition 103 has "remov[ed] any rational basis or MICRA's cap," which was ineffectual in any event. MICRA's alleged failure is not alone a valid basis on which to find it unconstitutional. (See *American Bank*, *supra*, 36 Cal.3d at p. 374). Nor is Proposition 103 the panacea Lora suggests. (See *Chan*, *supra*, 237 Cal.App.4th at p. 618 ["Proposition 103 . . . is not the palliative she claims."].)

Lora contends her case is distinguishable from *Stinnett* because she presented the court with evidence in support of her claim of changed conditions. (See *Stinnett*, *supra*, 198 Cal.App.4th at p. 1433, fn. 5; *id*. at pp. 1434-1435, conc. & dis. opn. of Dawson, J.) Some of evidence she provided[3] appears to be virtually identical to that provided,

---

[3]    We refer only to the evidence Lora provided to the trial court in conjunction with her briefs. Palmdale opposed her request for judicial notice, on which the court never ruled. We conclude that the court implicitly denied Lora's request. In so holding, we

14

considered, and found insufficient in *Chan*: a declaration from an economist documenting inflation and a declaration from an actuary discussing Proposition 103. (See *Chan*, *supra*, 237 Cal.App.4th at pp. 609-610.) Lora also furnished three stipulations and consent orders "rolling back" medical malpractice insurance premiums pursuant to Proposition 103 and Insurance Code section 1861.01, and data tables illustrating the "profitability results" of medical malpractice insurers in all 50 states. We do not find Lora's evidence particularly demonstrative of hanged circumstances. Notably, her additional evidence shows that medical malpractice insurers in this state continue to generate "excessive reserves" and "excessive profits" notwithstanding section 3333.2 and Proposition 103. Lora argues the financial successes of insurers means they "have no need to seek the 'skyrocketing' rates that triggered the 1975 crisis in the availability of health care," but that is certainly not the only conclusion one could draw from her evidence, and all that is necessary for a statute to survive a rational basis analysis is a plausible connection to a realistically conceivable legislative purpose. (See *Chan*, *supra*, 237 Cal.App.4th at p. 614.)

Lora also contends that "lack of a rational basis appears in the effect of inflation." The fixed damages cap applies equally to all plaintiffs, without precluding seriously injured plaintiffs like Lora from obtaining complete compensation for medical expenses

---

acknowledge that the court did not comply with Evidence Code section 456, which provides that "the court shall at the earliest practicable time so advise the parties [of its denial of a request for judicial notice] and indicate for the record that it has denied the request." We also recognize that in some instances, courts have concluded that a request was impliedly granted, where there was no specific denial by the trial court, there was no objection to the request, the request concerned matter for which judicial notice was proper, and it was evident that the trial court relied on the requested material. (See *Porterville Citizens for Responsible Hillside Development v. City of Porterville* (2007) 157 Cal.App.4th 885, 889; *Aaronoff v. Martinez-Senftner* (2006) 136 Cal.App.4th 910, 918-919.) Here, however, Palmdale objected to Lora's request for judicial notice, and there is no indication from the record that the court relied on the requested material in reaching its decision (perhaps due to Lora's apparent abandonment of the issues to which the requested material was pertinent.) Lora has not filed a request for judicial notice in this court. The proffered materials (which are included in our record) would not change our ruling in any event.

15

or lost earnings, and its fixed nature does not deprive it of a rational basis. Moreover, as *Chan* pointed out, the *Fein* court was cognizant of inflation when making its (still controlling) ruling. (See *Chan*, *supra*, 237 Cal.App.4th at pp. 616-617.) This argument is one better directed to the Legislature. (See *Stinnett*, *supra*, 198 Cal.App.4th at p. 1432.)

Finally, Lora contends that courts in other states have struck down similar damages caps. She points in articular to the Florida Supreme Court, which last year overturned Florida's damages cap in *Estate of McCall v. United States*, *supra*, 134 So.3d 894. Our colleagues in *Chan* rejected this argument, as do we. (See *Chan*, *supra*, 237 Cal.App.4th at p. 620.) First, as Palmdale points out, the Florida Supreme Court expressly restricted its analysis to wrongful death damages because "[t]he legal analyses for personal injury damages and wrongful death damages are not the same." (*Estate of McCall v. United States*, *supra*, 134 So.3d at p. 900, fn. 2.) Thus, *Estate of McCall* is facially inapposite to the instant case, and to *Chan* and *Stinnett*, all of which involved medical malpractice rather than wrongful death claims. Second, and more importantly, the California Supreme Court acknowledged in *Fein* that "[a] number of state courts have invalidated statutory provisions limiting damages in medical malpractice actions on a variety of theories." (*Fein*, *supra*, 38 Cal.3d at p. 161.) The court nevertheless concluded that it knew of no principle of California or federal constitutional law that prohibited the Legislature from "limiting the recovery of damages in a particular setting in order to further a legitimate state interest." (*Ibid.*) While the lineup of states on one side or the other of the debate may have changed since *Fein*, the principles of federal and California constitutional law underlying *Fein* remain sound.

For all of the reasons stated above, we agree with *Stinnett* and *Chan* that *Fein* remains controlling.[4] Lora's challenge to section 3333.2 on equal protection grounds must fail.

---

[4] The Supreme Court recently declined to review the issue of section 3333.2's constitutionality. (See *Rashidi v. Moser* (2014) 60 Cal.4th 718, 724, 728.)

## IV.     Right to Jury Trial

Lora contends that the damages cap in section 3333.2 violates her right to a jury trial, which is protected by the California Constitution.  (Cal. Const., art. I, § 16.)  She argues that *Jehl v. Southern Pacific Co.* (1967) 66 Cal.2d 821 (*Jehl*), which upheld the validity of the additur procedure, requires all alterations to a jury's damages award to rest on evidence contrary to the jury's award and be accompanied by the right to consent to the alteration or demand a new trial.  We are not persuaded.

The Supreme Court rejected a version of Lora's argument in *American Bank*, *supra*, 36 Cal.3d at pp. 374-376.  In *American Bank*, a plaintiff challenged the constitutionality of another ICRA provision, Code of Civil Procedure section 667.7, which permits defendants to pay "future damages" of $50,000 or more periodically over the course of time the plaintiff incurs the losses rather than in a lump sum at the time of judgment.  (See Code Civ. Proc., § 667.7; *American Bank*, *supra*, 36 Cal.3d at p. 364.)  The plaintiff contended that the jury trial guarantee requires a jury to fix the amount of future damages and make special findings on any issue that may affect the structuring of a periodic payment schedule.  (*American Bank*, *supra*, 36 Cal.3d at p. 375.)  The court disagreed, holding that once the jury found the amount of future damages, the court's determination of a periodic payment schedule did not infringe upon the constitutional right to jury trial.  (*Id.* at p. 36.)  The court, quoting *Jehl*, *supra*, 66 Cal.2d at pp. 828-829, reasoned that the jury trial guarantee did not preclude the adoption of new procedures or limitations "better suited to the efficient administration of justice . . . *if there is no impairment of the substantial features of a jury trial.*" (*American Bank*, *supra*, 36 Cal.3d at pp.375-376, emphasis in original.)  The court further confirmed that "[a] plaintiff has no vested property right in a particular measure of damages, and that the Legislature possesses broad authority to modify the scope and nature of such damages." (*American Bank*, *supra*, 36 Cal.3d at p. 368.)

The Supreme Court reaffirmed these key principles in *Fein* and *Salgado.*.  In *Fein*, the court reiterated the Legislature's broad authority to modify the nature and scope of damages.  (*Fein*, *supra*, 38 Cal.3d at p. 157.)  In *Salgado*, the court held that the damages

17

cap applies whether noneconomic damages sustained in a medical malpractice case are paid out in a lump sum or periodically as permitted by Code of Civil Procedure section 667.7, and that the plaintiff was entitled to the same amount under either payment option. (*Salgado*, *supra*, 19 Cal.4th at p. 640.) As is more pertinent here, the court explained that the damages cap "places no limit on the amount of injury sustained by the plaintiff, as assessed by the trier of fact, but only on the amount of defendant's liability therefor." (*Ibid.*) The court further explained that the cap "does not reflect a legislative determination that a person injured as a result of medical malpractice does not suffer" noneconomic damages, but rather represents "an attempt to control and reduce medical malpractice insurance costs by placing a predictable, uniform limit on the defendant's liability for noneconomic damages." (*Id.* at p. 641.)

Several appellate courts have relied on these principles and rejected Lora's argument in the specific context of section 3333.2. In *Yates v. Pollock* (1987) 194 Cal.App.3d 195, 200 (*Yates*), the court characterized it as "an indirect attack upon the Legislature's power to place a cap on damages." Relying on *American Bank* and *Fein*, the *Yates* court concluded that any such attack could not succeed because "'the Legislature retains broad control over *the measure*, as well as *the timing*, of damages that a defendant is obligated to pay and a plaintiff is entitled to receive, and [ . . .] may expand or limit recoverable damage so long as its action is rationally related to a legitimate state interest.' [Citations.]" (*Yates*, *supra*, 194 Cal.App.3d at p. 200.) The *Yates* court further echoed *Fein* in emphasizing that "no California case 'has ever suggested that the right to recover for such noneconomic injuries is constitutionally immune from legislative limitation or revision. [Citations.]' (*Fein* [], *supra*, 38 Cal.3d at pp. 159-160.)" (*Yates*, *supra*, 194 Cal.App.3d at p. 200.) Both *Stinnett*, *supra*, 198 Cal.App.4th at p. 1433, and *Chan*, *supra*, 237 Cal.App.4th at p. 629, followed *Yates*. *Chan* also expressly rejected plaintiff's reliance on *Jehl*. It explained that *Jehl* upheld the additur procedure "even though additur reflects a factual finding by the trial court." (*Chan*, *supra*, 237 Cal.App.4th at p. 629, fn. 14, emphasis omitted.) "MICRA's noneconomic damages cap,

18

in contrast, is not even a species of factfinding, but a legislative limitation on damages marking the legal boundaries of liability." (*Ibid.*)

We find these cases persuasive and well-reasoned. Once a verdict has been returned, the constitutional provision operates only to prohibit improper interference with the jury's decision. (*American Bank*, *supra*, 36 Cal.3d at p. 376.) There is no such improper interference under MICRA. The issue of damages is still submitted to the jury. The subsequent reduction of the damages awarded—either under the periodic payment provision challenged in *American Bank* (Code Civ. Proc., § 667.7), or under the damages cap challenged in this case—does not improperly interfere with the jury's decision. Unlike the additur procedure approved in *Jehl*, which involves a court determination of damages and accordingly permits the affected party to seek a new trial, the reduction in damages mandated by section 3333.2 "places no limit on the amount of injury suffered by the plaintiff, as assessed by the trier of fact." (*Salgado*, *supra*, 19 Cal.4th at p. 640.) It "is not a legislative attempt to estimate the true damages suffered by plaintiffs" (*Id*. at p. 641), and therefore properly is not subject to the same restrictions as the additur procedure.

## DISPOSITION

The judgment of the trial court is affirmed. Costs on appeal are awarded to Lancaster Hospital Corporation.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

COLLINS, J.

We concur:

WILLHITE, Acting P. J.

MANELLA, J.

19