Filed 8/10/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF
CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| COMMITTEE TO SUPPORT THE RECALL OF DISTRICT ATTORNEY GEORGE GASCÓN, | B326869 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 22STCP03795) |
| v. | |
| DEAN C. LOGAN, as Los Angeles County Registrar-Recorder/County Clerk, etc., et al., | |
| Defendants and Appellants. | |

APPEAL from orders of the Superior Court of Los Angeles County, James C. Chalfant, Judge. Dismissed in part, granted in part as petition for extraordinary writ.

Olson Remcho, Deborah B. Caplan, Lance H. Olson, and Benjamin N. Gevercer, for Defendants and Appellants.

Dordulian Law Group and Kathleen M. Cady; Marian M. J. Thompson; Ellis George Cipollone O'Brien Annaguey, Eric M. George and David J. Carroll, for Plaintiff and Respondent.

Hill Rivkins Brown & Associates, Adam C. Brown, for the California Association of Clerks and Election Officials as Amicus Curiae on behalf of Appellants.

Rob Bonta, Attorney General of California, Thomas S. Patterson, Senior Assistant Attorney General, Anya M. Binsacca and Kristin A. Liska, Deputy Attorneys General, for Secretary of State Shirley N. Weber as Amicus Curiae on behalf of Appellants.

_____

The Committee to Support the Recall of George Gascón (the Committee) filed a lawsuit against defendants Los Angeles County Registrar-Recorder/County Clerk Dean C. Logan and the Office of the Los Angeles County Registrar-Recorder/County Clerk (collectively "the Registrar") to enforce the Committee's rights under the Public Records Act (PRA) (Gov. Code, § 7920.000 et seq.) to examine a recall petition the Registrar certified as invalid for placement on the ballot.[1]  After filing a verified petition for writ of

---

[1]    Unspecified references are to the Government Code.  Effective January 1, 2023, the provisions in the PRA were reorganized and recodified without substantive change in Division 10, Title 1 of the
*(Fn. is continued on the next page.)*

2

mandate, the Committee filed an ex parte application for a preliminary injunction commanding the Registrar to disclose voter information and expand access under sections 7924.000 and 7924.110.  The trial court granted the ex parte application, ordered disclosure of various voter records, and ordered the parties to meet and confer on increased access.  By subsequent order, the court directed disclosure of additional records and granted the Registrar's request to set an amount of preliminary injunction bond.

On appeal from the original injunction order and the subsequent order, the Registrar contends the trial court misinterpreted sections 7924.000 and 7924.110 when ordering disclosure of voter records and increasing the Committee's access during the petition examination.  The Registrar also challenges the setting of bond.

The Committee has filed a motion to dismiss this appeal for lack of jurisdiction under the PRA, which provides that any "order of the court, either directing disclosure by a public official or supporting the decision of the public official refusing disclosure, is not a final judgment or order" and must be reviewed immediately by petition to the appellate court for issuance of an extraordinary writ.  (§ 7923.500, subd. (a).)

We conclude that the exclusive means of challenging an order granting or denying disclosure of records in

---

Government Code.  (§ 7920.000 et seq., as enacted by Stats. 2021, ch. 614, § 2; see §§ 7920.100, 7920.105.)  For ease of reading, we use the current sections of the PRA.

connection with the examination of an unsuccessful recall petition under the PRA is through section 7923.500, which requires filing a petition for extraordinary writ relief within 20 days of service of written notice of the order's entry. Because the Registrar did not meet this requirement for the injunction order, we lack jurisdiction to consider any contention challenging it. However, the Registrar's notice of appeal falls within the jurisdictional time limit for the subsequent order directing further disclosure of voter records. We therefore exercise our discretion to consider the Registrar's challenges to new directives appearing in that order as a petition for extraordinary writ. Exercising our discretion, we conclude that the order improperly commanded the Registrar to (1) authorize use of electronic voter lists outside its examination room, and (2) disclose redacted affidavits of voter registration. We dismiss the portion of the appeal purporting the challenge the injunction order and partially grant the petition for extraordinary writ.

## BACKGROUND

A. **The Recall Petition, the Registrar's Certification of Invalidity, and the Committee's Examination**

On December 8, 2020, George Gascón (hereinafter Gascón) assumed office as the Los Angeles County District Attorney. About a year later, the Registrar approved the form and wording of a request by the Committee to circulate a petition to recall Gascón from office. The Committee collected 715,833 signatures for its petition, 148,976 more

than the signatures required to trigger a recall election. (See Elec. Code, § 11221, subds. (a)(5), (b).) On July 6, 2022, the Committee submitted the recall petition to the Registrar to verify signatures, certify the sufficiency of the petition, and order a recall election. (See *id.*, §§ 11222, 11224.)

During a five percent random sample review, the Registrar found 72.55% of the sampled signatures valid. (See Cal. Code Regs., tit. 2, §§ 20521-20540.) Following a full count examination, on August 15, 2022, the Registrar issued a press release indicating it found a total of 520,050 validated signatures, approximately 46,000 signatures short of that needed to qualify the recall for the ballot.[2]

On August 18, 2022, the Committee informed the Registrar that it intended to examine the petition to assess "which signatures were disqualified and the reasons therefor." (§ 7924.110, subd. (b).) By written response, the Registrar agreed that section 7924.110 "governs the scope of the Petition examination. . . ." The Registrar allowed the Committee to examine petition signatures three days per week, 9:00 a.m. to 4:00 p.m., with no more than 14 representatives working at seven computer workstations under the control of Registrar staff. The Registrar

---

[2] The press release provided a breakdown of invalidated signatures under the following categories: "Not Registered" (88,464); "Duplicate" (43,593); "Different Address" (32,187); "Mismatch Signature" (9,490); "Canceled" (7,344); "Out of County Address" (5,374); and "Other" (9,331).

prohibited the Committee from using any personal electronic devices inside its examination room.

The Committee commenced its examination on September 6, 2022. The Registrar provided the Committee with reports generated for the examination and in response to many of the Committee's questions.[3] The Registrar agreed to make one additional report available, but also stated that any questions by the Committee that were not covered by the reports "have been determined to exceed the authorized scope of the examination . . . as set forth in Government Code section [7924.110]." The Registrar declined requests by the Committee to disclose training materials for the software program it used to store voter registration records (Runbeck's EMS-DIMS Election Management System, hereinafter "DIMS"), all signatures on file for each voter, various lists and/or reports for signatures deemed valid and accepted, and signatures invalidated as duplicates, death, fatal pending, or different address.[4]

---

[3] The Registrar identified three reports it had made available in the examination room, including: (1) a report of signatures challenged as due to death with a date of death; (2) a report of signatures challenged as fatal pending with a fatal pending reason code; and (3) a report of signatures challenged as duplicates with all other signatures for the voter, including accepted signatures.

As provided in the Registrar's opposition to the Committee's ex parte application for preliminary injunction, the term "fatal pending" refers to "voter registrations deemed incomplete or invalid for various reasons."

[4] The Registrar did provide a hardcopy list and report of invalided signatures, hardcopy list of signatures invalidated for death or fatal
*(Fn. is continued on the next page.)*

6

**B.    The First Amended Verified Petition for Writ of Mandate**

In October and November 2022, the Committee filed an initial and operative first amended verified petition for writ of mandate and complaint for declaratory and injunctive relief under the PRA and Elections Code section 13314 to enforce its right "'to inspect or to receive a copy of any public record or class of public records.'"[5]  (Quoting § 7923.000.) The Committee asserted causes of action for injunctive relief and a writ of mandate commanding the Registrar to disclose nine categories of documents and data pertaining to the Committee's petition and the Registrar's examination thereof, and any training materials used by Registrar staff to interpret its own data.  The Committee sought in relevant part electronic copies of lists of all voters the Registrar found submitted a valid signature, lists of all voters whose signatures were invalidated under various disqualification categories (duplicates, death, different address, and fatal pending), and original affidavits of registration and re-registration for voters whose recall signatures were rejected,

---

pending, and a hardcopy report showing when a voter changed or updated an address during the time the petition was circulated.

[5]    Section 7923.000 provides that any person may institute a proceeding for injunctive or declaratory relief, or for a writ of mandate, "to enforce that person's right under [the PRA to] receive a copy of any public record or class of public records."  Elections Code section 13314, subdivision (a) permits any elector to file an action seeking a writ of mandate "alleging that an error or omission has occurred, . . . or that any neglect of duty has occurred, or is about to occur."

7

excluding social security numbers, driver's license numbers, and identification card numbers.[6]

The operative petition also requested an order commanding the Registrar to permit 25 Committee representatives to examine the recall petition five days per week, with access to 25 computer workstations and the ability "to use personal electronic devices during the review process." Finally, the petition sought a temporary restraining order and preliminary injunction to grant the requested relief, an order declaring that the Registrar acted unlawfully by failing to provide the requested documents and access, and attorney fees and costs.

## C.   The December 2022 Order

On October 24, 2022, the Committee filed an ex parte application seeking an order to show cause why a preliminary injunction should not issue for the relief sought in the operative petition.[7] The court granted the ex parte

---

[6]     Other records sought by the Committee included:  all signatures on file for voters whose recall petition signature were rejected as mismatched; an electronic list of voters whose signatures were rejected during the random sample review; all training materials or user manuals for DIMS; all data and information relied on by the Registrar when rejecting a petition signature; and for all voters whose signatures were rejected, all voter files and any notations in DIMS appearing in those files.

[7]     The original ex parte application, filed before the operative petition, did not request disclosure of original affidavits of voter registration.  The Committee's request for disclosure of affidavits of
*(Fn. is continued on the next page.)*

application and set an order to show cause hearing for December 6, 2022.

In its written opposition, the Registrar argued that the documents sought by the Committee were not public records as defined under the PRA, and the Registrar had already provided documentation beyond that required by section 7924.110 and Elections Code section 2194. The Registrar contended that the Committee's requests were "based on a deliberately misleading reading" of section 7924.110, such that any additional disclosure would infringe on the Registrar's duty to safeguard confidential voter information.

On December 5, 2022, the trial court issued a lengthy tentative decision partially granting the Committee's application. At various points during a hearing the same day, the court stated that its order would be based on the PRA "requirement[s]." The Registrar acknowledged this, but "disagree[d] with the court's interpretation" of section 7924.110. During argument, the court orally amended its tentative decision and provided that its statements would supplement the final order, which would issue forthwith. The parties waived notice of entry of the final order.

The following day (December 6, 2022), the court issued a final order partially granting the Committee's ex parte application. The order discussed the relevant provisions of the PRA and Elections Code before addressing the probability of prevailing on the merits.

registration appeared in a subsequent ex parte application, which was not considered by the court.

9

As to the first category of requested records—voter signature files for voters whose signatures were denied as a mismatch—the court found the Committee had established a probability of success.  The court reasoned that section 7924.110 authorized examination of all signatures appearing in a voter file to determine "whether the signature compares with a signature on an affidavit of registration or an image thereof or a petition."

The court then found the Committee had failed to establish a probability of prevailing on its request for addresses and changes of address notices for voters whose residence address on the recall petition did not match his or her registered address.  In so finding, the court noted that the Registrar had already provided a printout of current and former addresses and dates of change during the time the petition had been circulated.

As to the third category of records requested— electronic lists of voters whose signatures were certified as valid or invalidated for certain reasons—the court found the Committee had established a probability of success.  To the extent any notations in its data management files were made during the Registrar's own petition examination, such notations constituted disclosable "memoranda" under section 7924.110.  These lists, already provided to the Committee in hardcopy form, could be provided in electronic format subject to an appropriate protective order.  However, the court found the Committee had failed to establish a probability of prevailing on its request for training materials and manuals

10

of DIMS, as this material constituted proprietary information that was exempt under section 7927.705 of the PRA.[8]

The court refrained from ruling on the Committee's requests for expanded access but authorized use of electronic devices under an appropriate protective order to be negotiated by the parties. The court ordered the parties to work towards a completed examination by March 31, 2023.

Turning to the balancing of harms, the court found in favor of the Committee based on its right to timely determine if its recall petition merited an election. Without a preliminary injunction, the Committee's examination would finish no later than May 2024, about six months before the end of Gascón's current term.

While the court did note the requirement of setting a preliminary injunction bond (Code Civ. Proc., § 529, subd. (a)), it found that the "parties d[id] not argue for a specific bond amount or provide evidence to calculate damages" for the bond. The court's final order did not set an amount of bond. On December 8 and 13, 2022, the Committee filed and served notices of entry of the final order on December 6, 2022, and the corresponding minute order.

## D. The January 2023 Order

Dissatisfied with each other's compliance with the injunction order, on January 23, 2023, both parties filed

---

[8] The court also declined to order the Registrar to generate and disclose a list of validated signatures.

their own ex parte applications. In its application, the Registrar sought an order setting an amount of bond and clarifying the December 2022 injunction order as to the Committee's ability to copy and transfer data from electronic lists for use outside of the Registrar's examination room.[9]

In its application, the Committee sought an order directing the Registrar in relevant part to comply with the December 2022 injunction order by permitting Committee counsel and their retained computer analysts to use electronic voter data outside the examination room. The Committee also sought an order commanding the Registrar to disclose current and former affidavits of registration for invalidated signatures, which was neither requested in the Committee's original ex parte application nor ordered disclosed by the court on December 6, 2022.

Following a joint hearing on both applications, the court issued an order partially granting the applications on January 30, 2023. The court authorized use of electronic data by the Committee outside the Registrar's examination room under a protective order and commanded the Registrar to disclose redacted hardcopy affidavits of registration.

---

[9] The Registrar also updated the court on its compliance. As of the date of its ex parte application, the Registrar had expanded workstations and signature review terminals; allowed more Committee representatives to examine the petition; disclosed date of birth information, the random sample list, and a list of voter notification cards sent the prior two years; created a list of valid signatures; placed all electronic lists on USB drives accessible in the examination room; and permitted use of electronic devices inside the examination room under certain conditions.

Finally, the court set an injunction bond in the amount of $500.

On January 31, 2023, the Registrar filed a notice of appeal from the orders issued on December 6, 2022, and January 30, 2023.

## DISCUSSION

The Committee has filed a motion to dismiss the Registrar's appeal as from a nonappealable order "either directing disclosure by a public official or supporting the decision of the public official refusing disclosure." (§ 7923.500, subd. (a) [such orders are "not a final judgment or order within the meaning of Section 904.1 of the Code of Civil Procedure from which an appeal may be taken"].)  In opposition, the Registrar contends that because the December 2022 and January 2023 orders do not order disclosure of "public records" under the PRA, they do not fall under section 7923.500's limitation on appellate review.

"The 'existence of an appealable judgment is a jurisdictional prerequisite to an appeal.'  [Citations.]" (*MinCal Consumer Law Group v. Carlsbad Police Dept.* (2013) 214 Cal.App.4th 259, 263 (*MinCal*).)  To determine the merits of the Committee's motion and the scope of our appellate jurisdiction, we review de novo section 7923.500 and the relevant PRA provisions.  (*Florez v. Linens 'N Things, Inc.* (2003) 108 Cal.App.4th 447, 451.)  As we shall discuss, we agree with the Committee that both orders from which this appeal was taken are nonappealable under

13

section 7923.500.  Due to the jurisdictional time limits set forth in section 7923.500, we further conclude that we lack jurisdiction to consider the December 2022 injunction order but may exercise our discretion to consider the Registrar's contentions challenging the January 2023 order.

## A.    Principles of Statutory Interpretation

When interpreting a statute, "'"[o]ur fundamental task . . . is to determine the Legislature's intent so as to effectuate the law's purpose.  We first examine the statutory language, giving it a plain and commonsense meaning.  We do not examine that language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment.  If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend.  If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy." [Citation.]'" (*City of San Jose v. Superior Court* (2017) 2 Cal.5th 608, 616-617 (*City of San Jose*); see also *National Lawyers Guild, San Francisco Bay Area Chapter v. City of Hayward* (2020) 9 Cal.5th 488, 498 (*Hayward*) [dictionary definitions may be a "reliable guide to statutory meaning; [but] sometimes context suggests that the

14

Legislature may have been using a term in a more technical or specialized way"].)

Ultimately, our job is to find an interpretation "that more readily comports with the statutory text" under the PRA. (*Hayward, supra*, 9 Cal.5th at p. 503.) "To the extent any doubt remains, California's constitutional directive to 'broadly construe[ ]' a statute 'if it furthers the people's right of access'" may favor one interpretation over another. (*Id.* at p. 507.)

## B. Relevant PRA Provisions

### 1. *The Right to Examine an Unsuccessful Recall Petition*

The PRA, codified in Title 1, Division 10 of the Government Code, provides that "access to information concerning the conduct of the people's business is a fundamental and necessary right of every person in this state." (§ 7921.000.) As employed in the PRA, "'public records' includes any writing containing information relating to the conduct of the public's business prepared, owned, used, or retained by any state or local agency regardless of physical form or characteristics." (§ 7920.530, subd. (a).) Part 5 of the PRA, entitled "Specific Types of Public Records," sets forth 19 chapters on the disclosure of different classes of records. Chapter 2 of Part 5, entitled "Election Materials and Petitions," prescribes limitations on disclosures applicable to voter information

15

(§§ 7924.000-7924.005), and initiative, referendum, recall, and other petitions (§§ 7924.100-7924.110).

Section 7924.000 provides in relevant part that "[e]xcept as provided in Section 2194 of the Elections Code, both of the following are confidential and shall not be disclosed to any person: [¶] (1) The home address, telephone number, email address, precinct number, or other number specified by the Secretary of State for voter registration purposes. [¶] (2) Prior registration information shown on an affidavit of registration."  (§ 7924.000, subd. (a).)

Records that are similarly exempted from disclosure as public records are any "recall petition" and "memorand[a] prepared by a county elections official in the examination of a petition, indicating which registered voters signed that particular petition."  (§ 7924.110, subd. (a) [such records are defined as "not public records"].)  Despite this broad exemption, whenever "a petition is found to be insufficient, [ ] the proponent of the petition and a representative of the proponent as may be designated by the proponent in writing" have a statutory right under section 7924.110 to examine the petition and any memoranda "in order to determine which signatures were disqualified and the reasons therefor."[10] (§ 7924.110, subd. (b).)  Any examination conducted under

---

[10]    A "petition" is defined as "any petition to which a registered voter has affixed the voter's own signature."  (§ 7924.100.)  A "proponent of the petition" includes any "person or persons who have charge or control of the circulation of, or obtaining signatures" to any recall petition.  (§ 7924.105, subd. (c); see Elec. Code, § 343.)

section 7924.110 must commence "not later than 21 days after certification of insufficiency, . . . ." (§ 7924.110, subd. (d).)

        2.     *Judicial Enforcement of PRA Rights*

To further the statutory right of access to records maintained by public agencies, the PRA requires prompt disclosure of records by any public agency unless "the record in question is exempt under express provisions of this division, or that on the facts of the particular case the public interest served by not disclosing the record clearly outweighs the public interest served by disclosure of the record." (§ 7922.000; see §§ 7922.530, subd. (a), 7921.300.) The agency must make this determination within 10 days from receipt of the request and must provide prompt notification of its determination and any reasons therefor. (See § 7922.535, subd. (a).)

In the event a public agency refuses to disclose records subject to inspection under the PRA, Part 4 of the statutory scheme provides general principles and procedures "to enforce that person's right under this division to inspect or receive a copy of any public record or class of public records." (§ 7923.000.) These statutes authorize judicial proceedings initiated by verified petition for injunctive or declaratory relief, or for a writ of mandate, to enforce a person's rights under the PRA. (§§ 7923.000, 7923.100.) Upon the filing of a verified petition, the court must set a schedule "with the

17

object of securing a decision as to the matters at issue at the earliest possible time." (§ 7923.005.)

If the court finds unjustified the public agency's decision to refuse disclosure under either section 7922.000 or 7920.505, the court must order disclosure of the record. (§ 7923.110, subd. (a).) If the court finds the agency's refusal to be justified, the court must return the record and issue an order supporting the agency's decision. (§ 7923.110, subd. (b).)

"An order of the court, either directing disclosure by a public official or supporting the decision of the public official refusing disclosure, is not a final judgment or order within the meaning of Section 904.1 of the Code of Civil Procedure from which an appeal may be taken, but shall be immediately reviewable by petition to the appellate court for the issuance of an extraordinary writ." (§ 7923.500, subd. (a).) Upon entry of any such order, "a party shall, in order to obtain review of the order, file a petition within 20 days after service upon the party of a written notice of entry of the order, or within a further time, not exceeding an additional 20 days, as the trial court may for good cause allow." (§ 7923.500, subd. (b).) A stay of any order "shall not be granted unless the petitioning party demonstrates that the party will otherwise sustain irreparable damage and probable success on the merits." (§ 7923.500, subd. (d).)

These enforcement procedures "reflect a clear legislative intent that the determination of the obligation to disclose records requested from a public agency be made

expeditiously." (*Filarsky v. Superior Court* (2002) 28 Cal.4th 419, 427 (*Filarsky*).)

## C.   The Registrar Appeals from Nonappealable Orders

We conclude that the Registrar has appealed from orders under section 7923.500 "either directing disclosure by a public official or supporting the decision of the public official refusing disclosure" under the PRA.  Both challenged orders either command the Registrar to disclose records in hardcopy and/or electronic form or support the Registrar's refusal to disclose records exempted from disclosure under the PRA.  (See §§ 7923.500, subd. (a), 7930.160 [listing § 7924.110 as a provision that "operates to exempt certain records, or portions thereof, from disclosure"].)  To quote the Registrar, the contentions raised in this appeal are based primarily on "the scope of section 7924.110" of the PRA, namely "the limited opportunity to examine an unsuccessful petition . . . and the scope of access to materials subject to disclosure. . . ."  (Citing § 7924.110 (b)(2); Elec. Code, § 2194.)  We therefore agree with the Committee that both orders are nonappealable under the plain language of section 7923.500.

The Registrar resists this conclusion, arguing that because the underlying orders did not order disclosure of "public records," section 7923.500 does not apply.  Mindful that no such limitation appears in the text of section 7923.500, the Registrar contends that our Supreme Court imposed this gloss in *Filarsky, supra,* 28 Cal.4th 418.  To

19

support its contention, the Registrar relies on the following language in *Filarsky*: "The purpose of [section 7923.500 (former § 6259, subd. (c))] limiting appellate review of the trial court's order to a petition for extraordinary writ is to prohibit public agencies from delaying the disclosure of public records by appealing a trial court decision and using continuances in order to frustrate the intent of the [PRA]." (*Filarsky*, *supra*, 28 Cal.4th at pp. 426-427, citing *Times Mirror Co. v. Superior Court* (1991) 53 Cal.3d 1325, 1334-1336.) In the Registrar's view, "the *Filarsky* Court therefore articulated what is not expressly stated in section 7923.500 (former § 6259), i.e., that the 'order . . . directing disclosure' must direct disclosure of a record determined to be a 'public record' within the [PRA]." And because the orders here did not order the disclosure of "public records" (see § 7924.000, 7924.110), the Registrar maintains that it was not compelled to pursue appellate review by way of section 7923.500.

We disagree with the Registrar's construction of section 7923.500. To begin with, we do not construe *Filarsky* as limiting section 7923.500 to particular types of records under the PRA. The Supreme Court granted review in *Filarsky* to decide a separate issue—"whether a superior court properly may grant declaratory relief in an action initiated by a public agency solely to determine the agency's obligation to disclose documents to a member of the public after the agency has denied the person's request under the [PRA]." (*Filarsky*, *supra*, 28 Cal.4th at p. 423; see *Newark*

20

*Unified School Dist. v. Superior Court* (2015) 245 Cal.App.4th 887, 908 ["*Filarsky*'s holding was narrowly drawn to address only the circumstances before it"]; *Public Utilities Com. v. Superior Court* (2016) 2 Cal.App.5th 1260, 1259, fn. 7 [same].)

Following a brief overview on the PRA, the Court stated that section 7923.500 was intended "to prohibit public agencies from delaying the disclosure of public records . . . ." (*Filarsky*, *supra*, 28 Cal.4th at p. 427.) Placing no particular emphasis on the term "public records," the Court found that the "legislative objective" behind section 7923.500 "was to expedite the process and make the appellate remedy more effective. [Citation.] Indeed, the [PRA's] provision regarding a public agency's obligation to act promptly upon receiving a request for disclosure . . . , the provision directing the trial court in a proceeding under the [PRA] to reach a decision as soon as possible . . . , and the provision for expedited appellate review . . . all reflect a clear legislative intent that the determination of the obligation to disclose records requested from a public agency be made expeditiously." (*Filarsky*, *supra*, 28 Cal.4th at p. 427, citations omitted.)

If anything, we construe *Filarsky* as acknowledgment by the Court that the PRA enforcement procedures were designed for prompt resolution of requests for disclosure made pursuant to the PRA. (See *id.* at p. 429 ["a public agency could appeal from a judgment in favor of . . . disclosure, thus further delaying a determination whether the records must be disclosed and thwarting the clear intent

21

of the Legislature that the matter be resolved expeditiously"].)  As we shall discuss, that very concern is implicated in this case.

A review of relevant legislative history confirms that the need for prompt resolution of an agency's duty of disclosure under the PRA is not limited to "public records" as that term is defined.  As this case makes clear, that need also exists when the right to a petition examination is exercised.  The statutory right of a petition examination was added to section 7924.110 in 1980 (Stats. 1980, ch. 535, § 1) and arose from a situation similar to the one here.  (See Assem. Comm. on Elections and Reapportionment, Assem. Bill Digest, Analysis of Assem. Bill No. 2328 (1979-1980 Reg. Sess.), as amended Mar. 27, 1980, p. 2 [describing a 1978 Los Angeles Superior Court decision permitting proponents of a petition to inspect the petition "after such petition has been declared to contain an insufficient number of qualified signatures"]; accord Sen. Democratic Caucus, Analysis of Assem. Bill No. 2328 (1979-1980 Reg. Sess.), as amended June 17, 1980, p. 1 ["[p]roponents state that [petition] proponents should have the right to examine signatures that have been disqualified by county clerks to assure proper review"].)  In addition to enacting this statutory right of examination, the 1980 amendment also enacted the 21-day limitations period for any petition examination.  (§ 7924.110, subd. (d), as enacted by Stats. 1980, ch. 535, § 1.)  Viewing these enactments in harmony, the 1980 amendment

signified not only an intent by the Legislature to enforce a right of examination, but a right to do so promptly.

In addition, the right of prompt examination under section 7924.110 readily comports with section 7923.500, itself a statute that was designed "to *speed* appellate review, . . ." (*Times Mirror*, *supra*, 53 Cal.3d at pp. 1332-1333; accord, Sen. Com. on Judiciary, Analysis of Sen. Bill No. 2222 (1983-1984 Reg. Sess.), as introduced, p. 3 [§ 7923.500 proposed out of concern that "[some] public officials are frustrating the intent of the laws for disclosure" by filing appeals]; Assem. Com. on Judiciary, Worksheet on Sen. Bill No. 2222 (1983-1984 Reg. Sess.), p. 2 [enacting legislation "would correct these problems by providing that a Superior Court decision concerning a Public Records Act dispute is *not* a final judgment from which an appeal may be taken"].)[11]

---

[11] Section 7923.500 was enacted by legislation sponsored by the California Newspaper Publishers' Association "to remedy a problem which arises when public agencies attempt to withhold information from the public." (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 2222, *supra*, at p. 2; Assem. Com. on Judiciary, Worksheet on Sen. Bill No. 2222, *supra*, at p. 2 ["access delayed is access denied"].)

In 1991, the Legislature amended section 7923.500 to clarify that orders under the PRA "shall be immediately reviewable by petition to the appellate court for issuance of an extraordinary writ." (Stats. 1990, ch. 908, § 2.) "While an appeal is a matter of right in most types of cases, statutes which create litigable rights, may also limit the right to appeal. Such is the case with the [PRA]." (Sen Com. on Judiciary, Analysis of Sen. Bill No. 2272 (1989-1990 Reg. Sess.), as introduced, p. 3.)

The very same concerns raised in the legislative histories in sections 7924.110 and 7923.500 exist in this case. According to the Committee, the original conditions under which it conducted its examination caused significant delay, projecting a completion date of May 2024, approximately six months before Gascón's first term ends and two months after the next primary election for Los Angeles County District Attorney. To enforce its rights of examination, the Committee filed a verified petition for relief under the PRA (§§ 7923.00, 7923.100), the trial court set a schedule for proceedings to expedite its decision under the PRA (§ 7923.005), and the court issued an order directing disclosure or affirming the Registrar's decision refusing to disclose records under the PRA (§ 7923.500). And while the Registrar asserts that it has worked in good faith with the Committee to expedite its examination, the Registrar admits that it has also "relied on the stay" pending appeal to refuse disclosure of documents previously ordered by the court. The Registrar's resistance reflects the very dangers on which sections 7924.110 and 7923.500 were enacted and amended. (Accord, *Filarsky*, *supra*, 28 Cal.4th at pp. 429-430.)

Indeed, the Registrar itself raises concerns favoring application of section 7923.500 in this case. Throughout this appeal, the Registrar has consistently maintained that the trial court's orders have caused "costly and disruptive impact on the Registrar's office. . . ." The Register also argues that the trial court's orders have impacted "the operations of the

24

County elections office" and "the public as a whole. . . ."[12] The Registrar (or any county elections official) would benefit from expedited review to correct any error causing this breadth of public harm.

To effectuate the purposes of sections 7924.110 and 7923.500, and to harmonize the examination procedures set forth in section 7924.000 through 7924.110 within the overall context of the PRA (*City of San Jose, supra*, 2 Cal.5th at pp. 616-617), we therefore construe 7923.500 as covering a trial court's order directing or refusing disclosure of records in connection with the examination of an unsuccessful recall petition. And because both orders at issue in this appeal directed or refused disclosure of records in connection with the Committee's petition examination under section 7924.110, the Registrar was required to file petitions for extraordinary writ review from those orders.

---

[12] We previously granted applications by the Secretary of State and California Association of Clerks and Elections Officials to submit amicus curiae briefs in support of the Registrar. We also granted the Committee's application to file a response

The amicus briefs argue that the trial court's interpretation of section 7924.110 "threatens to impede elections officials' ability to carry out [their official] duties and thus to carry out elections." According to the Association, this interference would cause a "potential chilling effect" on "the millions of California voters who engage in the democratic process by signing petitions," and would interfere with the people's right of privacy to voter information.

The Committee disputes these arguments, characterizing each as "leav[ing] the petition examination process toothless and subject to the whim of the Executive branch."

**D.  Construing the Notice of Appeal as an Extraordinary Writ**

In anticipation of our conclusion above, the Registrar requests that we exercise our discretion to treat its notice of appeal as an extraordinary writ petition.  (Citing *Summers v. Superior Court* (2018) 24 Cal.App.5th 138, 142 (*Summers*); *Coronado Police Officers Ass'n v. Carroll* (2003) 106 Cal.App.4th 1001, 1006 (*Carroll*).)

It is true that appellate courts have discretion to treat an appeal from a nonappealable order as a petition for extraordinary writ relief.  (*Summers*, *supra*, 24 Cal.App.5th at p. 142; *Carroll*, *supra*, 106 Cal.App.4th at p. 1006.)  But that discretion has been exercised "only under limited, extraordinary, circumstances."  (*Mincal*, *supra*, 214 Cal.App.4th at p. 265.)  We now address whether the Registrar has demonstrated extraordinary circumstances warranting the exercise of our discretion to construe the appeal as an extraordinary writ from either the December 2022 injunction order or the January 2023 order.

1.  *We Lack Jurisdiction to Consider the December 2022 Injunction Order*

Most of the Registrar's appellate contentions challenge the trial court's December 2022 injunction order.  The Registrar has provided no argument on this court's ability to ignore the jurisdictional time limits prescribed in section 7923.500, subdivision (b).  (See *In re Antilia* (2009) 176 Cal.App.4th 622, 630 ["[a] time limit prescribed by the

26

Legislature for filing a petition for writ of mandate is jurisdictional"].) Under this express limitation, the Registrar was required to file a petition for extraordinary writ relief "within 20 days after service upon the party of a written notice of entry of the order, or within further time, not exceeding an additional 20 days, as the trial court may for good cause allow." (§ 7923.500, subd. (b).) This deadline is both "mandatory and jurisdictional." (*Mincal*, *supra*, 214 Cal.App.4th at p. 264.)

The Registrar filed a notice of appeal from the December 2022 injunction order on January 31, 2023, outside the 40-day jurisdictional window from both notices of entry of order (December 8 and 13, 2023). We therefore lack jurisdiction to consider the merits of the December 2022 injunction order. (See *Mincal*, *supra*, 214 Cal.App.4th at p. 264 ["if a writ petition is not filed within the time limit, we are without power to review the merits of the trial court's ruling"]; compare *Carroll*, *supra*, 106 Cal.App.4th at p. 1006 [exercising discretion where public agency "filed the notice of appeal within the statutory time period for seeking writ review"], with *MinCal*, *supra*, at pp. 265-266 [refusing to exercise discretion where public agency filed notice of appeal from PRA order beyond time permitted under section 7923.500], and *Austin v. City of Burbank* (2021) 67 Cal.App.5th 654, 656 [same].)[13]

---

[13] Based on our own research, it appears that some appellate courts have excused untimely notices of appeal by construing them as writs of mandate. But in those cases, the courts excused the delayed
*(Fn. is continued on the next page.)*

27

### 2. *We Exercise Our Discretion to Consider Portions of the January 2023 Order*

Notwithstanding our discussion above, the Registrar's notice of appeal falls within the jurisdictional deadline under section 7923.500, as to the trial court's January 2023 order. We must therefore determine whether to exercise our discretion to consider any contention challenging this order. (*Carroll, supra,* 106 Cal.App.4th at p. 1006; see *PV Little Italy, LLC v. MetroWork Condominium Assn.* (2012) 210 Cal.App.4th 132, 142-143 [whether a particular order constitutes a separate appealable injunction "depends not on its title or the form of the order, but on the "'substance and effect of the adjudication'""].)

The trial court's January 2023 order granted ex parte applications by the parties to (1) set an amount of bond and (2) issue additional orders related to the preliminary injunction. We address these portions in turn.

### a. *We Do Not Consider the Order Setting Amount of Bond*

The PRA does not specifically bar the requirement of an undertaking on the grant of an injunction. (*Stevenson v.*

---

filings to relieve the appellants from detrimentally relying on prior caselaw causing their delay. (See *Phelan v. Superior Court* (1950) 35 Cal.2d 363, 371; *Drum v. Superior Court* (2006) 139 Cal.App.4th 845, 853; see also *In re Meranda P.* (1997) 56 Cal.App.4th 1143, 1164-1165 [refusing to apply this principle in civil appeals, as it "prevails only in criminal actions"].) The Registrar has not alleged that it relied on prior caselaw to delay filing its notice of appeal.

*City of Sacramento* (2020) 55 Cal.App.5th 545, 552; see Code Civ. Proc., § 529.) But "the injunction bond requirement of section 529 can be waived or forfeited by the party to be enjoined." (*Smith v. Adventist Health System/West* (2010) 182 Cal.App.4th 729, 744 (*Smith*).) This can be done orally or in writing, or it may be "inferred from their conduct." (*Id.* at p. 745.)

We decline to consider the issue of bond amount in this case for several reasons. First, as the Registrar concedes, the post-injunction order setting an amount of bond amount is not separately appealable. (*County of Los Angeles v. City of Los Angeles* (1999) 76 Cal.App.4th 1025, 1027-1028; see *People ex rel. Feuer v. Progressive Horizon, Inc.* (2016) 248 Cal.App.4th 533, 538-539.)

Second, the Registrar did not argue for the posting of bond or for an amount in its written opposition to the Committee's application for an injunction.[14] The trial court's tentative decision informed the Registrar of the posting of bond, the failure of the parties to set forth argument on a bond amount, and the ability to raise "the value of the bond at the hearing." The Registrar did not do so,[15] and instead

---

[14] The Committee has filed a motion to augment the record to include a reporter's transcript of a hearing on February 14, 2023, in which the trial court denied the Registrar's motion objecting to the sufficiency of bond. (Cal. Rules of Court, rule 8.155(a)(1).) We deny the motion.

[15] Without providing a citation to the record, the Registrar contends it "first raised [the bond issue] at the hearing" on December 5, 2022. We disagree. The only reference made by the Registrar to a
*(Fn. is continued on the next page.)*

complied with several directives in the injunction order while attempting to "meet and confer to discuss an amount [of bond] and try to resolve this by submitting a stipulation." It was only when the Committee informed the Registrar that it saw no "basis for the Registrar to seek to reopen or reconsider the issue of a bond with the [c]ourt" that the Registrar filed an ex parte application to set bond amount.

On these facts, we decline to consider the Registrar's challenge to the amount of bond. To rule otherwise would invite parties "to achieve a greater benefit by saving the injunction bond issue for appeal when it could have been dealt with more efficiently in the lower court with much less detriment to the party who obtained the injunction." (*Smith, supra*, 182 Cal.App.4th at p. 749.) This principle is particularly significant in this case, which as discussed requires expedited judicial review. (Cf. *ibid.* ["[t]he resulting inefficiencies are an unacceptable burden on the administration of civil litigation"].)

> b. *We Consider New Directives in the January 2023 Order*

What remains in the January 2023 order are directives commanding the Registrar to disclose additional documents

---

bond amount was in response to the court's suggestion that it hire more workers to expedite the Committee's examination. The Registrar responded, "Well, I guess we can talk about that in terms of the bond, your honor. But we're talking about . . . significant problems hiring people and just getting those positions filled." This response did not properly raise the issue of bond amount at the hearing.

and to expand access.  The Registrar challenges two directives in this order:  (1) use of electronic voter lists outside the examination room; and (2) disclosure of current and former affidavits of voter registration.  We agree with the Registrar that these are *new* directives warranting consideration.[16]  We review the merits of these directives de novo.  (*Kinney v. Superior Court* (2022) 77 Cal.App.5th 168, 177; *Los Angeles Unified School Dist. v. Superior Court* (2014) 228 Cal.App.4th 222, 236-237.)

### 1.     *Relevant Proceedings*

In its ex parte application filed January 23, 2023, the Committee sought an order commanding the Registrar to comply with various directives that were purportedly in the court's December 2022 injunction order, including (1) authorization for Committee counsel and their retained computer analysts to use the electronic lists of voter data outside the examination room subject to a protective order, and (2) disclosure of current and former affidavits of registration for signatures rejected for various reasons.  In

---

[16]     At oral argument, the Committee conceded that the actual affidavits of voter registration—not the information appearing on the affidavits—were not ordered disclosed at the December 2022 hearing. When asked to support its position at oral argument that use of electronic lists outside the examination room had been previously ordered at the December 2022 hearing, counsel identified several pages of reporter's transcript from the injunction hearing.  Those pages do not contain a statement by the court ordering any use of electronic lists outside the examination room.

opposition, the Registrar argued that both requested directives were not previously ordered by the Court."

At a hearing on January 24, 2023, the court mistakenly believed it had previously ruled on the Committee's ability, through counsel of record for and any computer analysts operating under counsel's direction, to "remove the list[s] from the examination room subject to a protective order. . . ."[17]  The court also stated that it previously ordered the disclosure of addresses appearing on affidavits of voter registration.  As to this latter contention, the Registrar agreed with the court but argued that the affidavits themselves had not been ordered disclosed.  The court responded: "If I ruled on December [2022] that they [(the Committee)] get access to affidavits of registration to look at prior addresses, then that was my ruling."  The court directed the Registrar to pull former registration cards for voter signatures disqualified for various rejection categories, redact confidential material under section 7924.000, and provide the Committee hardcopy affidavits in redacted form.

---

[17]    More than six weeks had passed since the original injunction hearing.  The court did not rule on the Committee's ability to remove electronic data outside the examination room at the December 2022 hearing.  Instead, the court ordered the production of electronic copies of existing hardcopy lists subject to a strict protective order to be negotiated by the parties.  The court's written order did not address the removal of electronic data.  On the contrary, the order provided that the parties could minimize any concerns about voter confidentiality "by an appropriate protective order limiting the use of electronic copies solely to the purpose of examining the rejected votes and *only to be used in the examination room*."  (Italics added.)

When the Registrar inquired about redaction and production costs, the court ordered the parties to "discuss it after you know how much it's going to be, and if it [you] can't reach an agreement, you're going to have to file an ex parte for cost shifting."

The court issued a written order granting the Committee's ex parte application on January 30, 2023. The order directed the Registrar to provide records, including redacted hardcopies of current and former affidavits of registration for voters whose registration address was changed during the circulation period, and whose signatures on the recall petition were disqualified under specific rejection categories. The court ordered the parties to submit a proposed protective order placing restrictions on access by Committee representatives inside the examination room and allowing use of electronic lists outside the Registrar's examination room by Committee counsel and any retained computer analyst.

2. *Authorizing Use of Electronic Voter Data Outside the Registrar's Examination Room Was Unauthorized*

The Registrar contends the trial court misconstrued section 7924.110 when authorizing use of electronic voter lists outside its examination room. The Registrar asserts section 7924.110 provides only a right to "inspect" the lists, not a right to remove lists or information beyond the Registrar's supervision. The Committee has provided no

33

argument in response to this contention. (See *Sweeney v. California Regional Water Quality Control Bd.* (2021) 61 Cal.App.5th 1093, 1149 [courts may ignore arguments by respondent when they are unsupported by evidence or authority] (*Sweeney*)); *Maral v. City of Live Oak* (2013) 221 Cal.App.4th 975, 984 ["'[a]n appellate court is not required to examine undeveloped claims, nor to make arguments for parties'"].) Given the lack of argument or supporting evidence to the contrary presented, and based on the constitutional guarantee of voter privacy, we agree with the Registrar's limited interpretation of section 7924.110.

Section 7924.110 provides that for any petition examination, the county elections official "[must] retain the petitions . . . as prescribed in [Elections Code section 17200]." (§ 7924.110, subd. (d).) In turn, section 17200 of the Elections Code restricts "[p]ublic access to the petition . . . in accordance with Article 2 (commencing with Section 7924.100) of [the PRA]." (Elec. Code, § 17200, subd. (d).) Beyond its reference back to the PRA, section 17200 of the Elections Code provides no direction on the scope of an examination or the duties of a county elections official to ensure a full examination. The PRA does not define the term, and we find no guidance from the legislative history of section 7924.110.[18]

---

[18] The Legislature first enacted a statutory right of examination by way of an amendment to section 7924.110 in 1977. But that right was limited to various public officials not relevant here, and the former law did "not spell out a procedure for obtaining court approval" for such
*(Fn. is continued on the next page.)*

34

We must therefore determine what the Legislature meant by "inspection" and "examination." The verb "inspect" is commonly defined to mean "view closely and critically" and "examine with care." (Webster's 3d New Internat. Dict. (1981) p. 1170.) The verb "examine" is defined to mean "look over" and "seek to ascertain." (*Id.* at p. 790; see *Hayward, supra*, 9 Cal.5th at p. 499 [courts may utilize common definitions in statutory interpretation].) These definitions lend some support for the court's order, as they contemplate the ability to look over electronic lists without specifying a location to determine which signatures were disqualified and the reasons therefor.

In view of the constitutional guarantee of voter privacy, however, it is unlikely the Legislature intended to broaden a petition examination by permitting the proponent to copy petition and memoranda data for use beyond the control of county election officials. In *Bilofsky v. Deukmejian* (1981) 124 Cal.App.3d 825, 831 (*Bilofsky*), this court narrowly

---

examination. (Sen. Com. on Elections and Reapportionment, analysis of Assem. Bill No. 1710 (1977-1978 Reg. Sess.), as introduced, p. 1; see Stats. 1977, ch. 556, § 4.) Then, in 1980, the Legislature amended section 7924.110 to grant "the same rights to examine such petitions as is currently afforded the public officers, public employees, and public entities as set forth above." (Leg. Counsel's Dig., analysis of Assem. Bill No. 2328 (1979-1980 Reg. Sess.), as approved July 16, 1980, p. 95.) While the amended law was also designed "to assure proper review" of disqualified signatures by local county clerks, it too provided no guidance on the scope of a petition examination. (Sen. Democratic Caucus, analysis of Assem. Bill No. 2328 (1979-1980 Reg. Sess.), as amended July 17, 1980, p. 1.)

construed a provision in the Elections Code to prohibit any circulator of a petition (initiative, referendum, or recall) from using the list of signatures "'for any purpose other than qualification of the . . . question for the ballot.'" (*Id.* at pp. 827-828, fn. 1, quoting former Elec. Code, § 2770.) Guided by "the California constitutional guarantee of privacy by insuring the least interference with that right of persons signing . . . recall petitions," we narrowly construed the provision as "designed in order to protect the signer from any use of his identity other than that integral to the [petition] process." (*Id.* at pp. 831, 833; see Cal. Const., art. I, § 1.)

We agree with the Registrar that the same privacy concerns exist for voters who participate in recall petitions. (See §§ 7924.000, subds. (a)-(c).) Use of voter information in this case outside the Registrar's walls would undoubtedly give the Committee greater control over how they use the information. In turn, this level of control could expedite its petition examination. But the Committee already has access to this information for use *inside* the examination room. And as a practical matter, we are mindful of the risks of unlawful dissemination of voter data in this case, even if that risk is mitigated by a protective order.[19] Under these

---

[19] On January 30, 2023, the court signed and filed a protective order previously approved as to form and content by the parties. The following day, the Registrar filed its notice of appeal and emailed the Committee that it would "not be providing the electronic lists or the copies of the affidavits of registration pending appeal, and we will not be entering into the protective order entered by the Court."

circumstances, we do not believe that use of electronic voter data outside the Registrar's walls is "integral" to the Committee's petition examination. (*Bilofsky*, *supra*, at pp. 831, 833.)

We therefore decline to construe section 7924.110 broadly to permit the Committee's use of any recall or memoranda material outside the Registrar's examination room. Our construction of section 7924.110 may affect the Committee's ability to control the speed of its examination, but given the access it already has, we do not believe its rights of examination would be impacted any "greater than under many statutes designed to afford to individuals a privilege of privacy. . . ." (*Bilofsky*, *supra*, 124 Cal.App.3d at p. 833.)[20]

### 3. *Ordering Redacted Hardcopies of Affidavits of Registration Was Unauthorized*

The Registrar contends the January 2023 order improperly ordered the disclosure of redacted copies of current and former affidavits of registration for voters whose registration address was changed during the circulation period, and whose signatures on the recall petition were disqualified under specific rejection categories (fatal

---

[20] The absence of legislative authority addressing the disclosure and use of electronic voter information for purposes of a petition examination (§§ 7924.000 et seq.; Elec. Code, § 2188 et seq.), is a subject the Legislature may wish to address in the future.

pending, mailing address, and/or registration date). We agree.[21]

Section 7924.000 provides that "[p]rior registration information shown on an affidavit of registration" is "confidential and shall not be disclosed to any person" except as provided in section 2194 of the Elections Code. (§ 7924.000, subd. (a).) Section 2194 of the Elections Code also provides that "the affidavit of voter registration information" is "confidential and shall not appear on any computer terminal, list, affidavit, duplicate affidavit, or other medium routinely available to the public at the county elections official's office." (Elec. Code, § 2194, subd. (a)(1).) Section 2194 does provide an exception, but it is a limited one: affidavits of voter registration information "[s]hall be provided with respect to any voter, subject to [additional confidentiality provisions in the Elections Code], to any candidate for federal, state, or local office, *to any committee for or against any initiative or referendum measure for which legal publication is made*, and to any person for election, scholarly, journalistic, or political purposes, or for governmental purposes, as determined by the Secretary of State." (Elec. Code, § 2194, subd. (a)(3), italics added.)

Conspicuously missing from this provision is any reference to a committee or proponent for a recall petition. ""Ordinarily, where the Legislature uses a different word or

---

[21] In light of this conclusion, we do not consider the Registrar's alternative contention that the Committee never requested the affidavits of registration in its ex parte application.

phrase in one part of a statute than it does in other sections or in a similar statute concerning a related subject, it must be presumed that the Legislature intended a different meaning.”’” (*Hayward*, *supra*, 9 Cal. 5th at p. 500, quoting *Rashidi v. Moser* (2014) 60 Cal.4th 718, 725 (*Rashidi*).)

The Committee recognizes Elections Code section 2194 omits any reference to recall petitions, and instead argues “there is no reason why recall petitions would be excluded.” The Committee fails to support this position with any reasoned argument. (See *Sweeney*, *supra*, 61 Cal.App.5th at p. 1143.)

The only authority on which the Committee purports to rely are section 82043 and Elections Code section 2188.5. Both of these statutes specifically refer to recall procedures *in addition to* initiative and referendum procedures. Section 82043, part of a separate statutory scheme (the Political Reform Act of 1974, § 81000 et seq.), defines “measure” as any proposition submitted “to a popular vote at an election by initiative, referendum, or recall procedure.” Similarly, Elections Code section 2188.5 provides that any person who requests voter information or “obtains signatures or other information collected for an initiative, referendum, . . . or recall petition shall not send that information outside of the United States or make it available in any way electronically to persons outside the United States . . . .” (Elec. Code, § 2188.5, subd. (b).)

Assuming these provisions are similar to the provisions at issue in this case or concern related subjects (*Hayward*,

*supra*, 9 Cal.4th at p. 500), they support the Registrar's position and not the Committee's.  Both section 82043 and Elections Code section 2188.5 expressly reference recall petitions; Elections Code section 2194 does not.  As both section 82043 and Elections Code section 2188.5 clearly illustrate, the Legislature is aware of its ability to define the scope of a political measure statute to include recall measures.  Had it intended to define the scope of Elections Code 2194 in like manner, we would expect it to have done so.  (See *ibid.*; *Rashidi, supra*, 60 Cal.4th at p. 725.)  Thus, we conclude that because Elections Code section 2194, as incorporated into section 7924.000, does not authorize disclosure of affidavits of registration to proponents of recall petitions, the trial court erred by ordering disclosure of them in this case.

## DISPOSITION

The portion of the appeal challenging the order of December 6, 2022, is dismissed.  The portion of the appeal challenging the order of January 23, 2022, is deemed a petition for extraordinary relief.  The petition for extraordinary writ is granted in part.  Let a writ of mandate issue directing the superior court to vacate its January 23, 2023, order to the extent it (1) authorizes use of electronic lists outside the Registrar's examination room, and (2) commands disclosure of redacted affidavits of voter registration.  The court shall issue a new and different order denying both requests.  In all other respects, the petition for extraordinary writ is denied.

The parties are to bear their own costs on appeal. (See Cal. Rules of Court, rules 8.278(a)(2), 8.493(a)(1)(B).)

**CERTIFIED FOR PUBLICATION**

MORI, J.

We concur:

CURREY, P. J.                                        ZUKIN, J.

41